HOUSTON CHRONICLE PUB. CO. v. LEMMON. (No. 7265.)

(Court of Civil Appeals of Texas. Galveston. Feb. 28, 1917. Rehearing Denied March 22, 1917.)

1. MASTER AND SERVANT ⚙⇒332(1)—INJURIES TO THIRD PERSON—QUESTION FOR JURY.

Evidence that defendant newspaper's employé threw a tightly folded newspaper into a group, injuring plaintiff, made defendant's negligence a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1274.]

2. NEGLIGENCE ⚙⇒59 — PROXIMATE CAUSE — ANTICIPATING EXACT INJURY.

It is sufficient to constitute negligence if defendant should have anticipated his act would likely cause some injury to some person; it being unnecessary that its precise result be foreseen.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 72.]

3. TRIAL ⚙⇒260(3)—REQUESTED INSTRUCTION —INSTRUCTION ALREADY GIVEN.

In action against a newspaper—because an employé threw a folded paper against plaintiff, various requested charges by defendant on the burden of proof held sufficiently covered by the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 653.]

4. APPEAL AND ERROR ⚙⇒743(1)—BRIEFS IN REFERENCE TO RECORD.

Under Rev. St. 1911, art. 2061, requiring bills of exceptions to refusal of special charges, and Court of Civil Appeals rule 31 (142 S. W. xiii), requiring appellant's brief to contain references to the record, etc., an assignment of error not showing where the bill of exceptions to the charge complained of can be found in the record will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2999.]

5. TRIAL ⚙⇒115(4)—ARGUMENT OF COUNSEL— READING PORTION OF DEPOSITION.

Counsel in his argument to the jury may read only a portion of a deposition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 282, 298.]

6. MASTER AND SERVANT ⚙⇒330(3)—INJURIES TO THIRD PERSON — SUFFICIENCY OF EVIDENCE.

The direct testimony of several witnesses held to sustain a jury finding that a folded newspaper which injured plaintiff was thrown by defendant newspaper's employé rather than by another boy who accompanied him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272.]

7. NEGLIGENCE ⚙⇒134(11) — SUFFICIENCY OF EVIDENCE—CAUSE OF INJURY.

Evidence, including testimony of several physicians, held to sustain a jury finding that plaintiff's severe and long-continued suffering was caused by being hit in the face by a folded newspaper.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 273.]

8. APPEAL AND ERROR ⚙⇒1171(2)—VERDICT— PREJUDICE AND PASSION.

A $10,000 verdict does not indicate prejudice and passion on the jury's part requiring reversal because exceeding the amount claimed by $19.50.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4547, 4548.]

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by Mollie Lemmon against the Houston Chronicle Publishing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Kittrell & Kittrell, of Houston, for appellant. Fisher, Campbell & Amerman, of Houston, for appellee.

LANE, J. This suit was instituted by appellee against appellant to recover damages for injury alleged to have been suffered by her by being struck by a newspaper thrown by a party who was alleged to be a servant of appellant, such paper being thrown July 31, 1911, for the purpose of delivering it at No. 2408 La Branch street, Houston, Tex.; said paper having been published by the appellant.

Appellee alleged that on and prior to the date of the injury, defendant published and distributed the Houston Chronicle, and distributed the same throughout the residence district of the city of Houston, by its employés for that purpose, who delivered such newspaper each day by hand to the regular subscribers, as a part of the general plan and custom of the publication and delivery of said newspaper; that upon the date named appellee was sitting upon the porch in company with her sister and other persons of the household, when the employé of appellant, whose custom and duty it was to deliver said paper daily, in the performance of such duty, twisted one of said papers tightly together, so that it formed a compact projectile, which could be thrown to a great distance, and negligently, and with great force, threw said paper toward and upon said porch where appellee was sitting, striking her, and that as a result of the blow she was seriously and permanently injured; that the act and conduct of appellant's employé in throwing said paper towards appellee in the manner and under the circumstances stated was negligent and careless, and that he knew, or should reasonably have known, of the danger to appellee thereby; and that in the exercise of ordinary care he should have foreseen the danger of injury to which appellee, and those with her, would be and were exposed by such act. She sought to recover damages both for the injury and the alleged attendant suffering, and to recover damages for expenditures incurred in the way of doctor's bills, drug bills, and traveling and hotel bills incurred in the effort to recover her health by means of travel and recreation, under the advice of physicians.

Appellant pleaded by way of exception that such expenditures of traveling expenses were not recoverable, because they were not the proximate consequence of any act of the agent of the appellant.

Defendant further pleaded a general denial under which it offered evidence that the party who threw the paper was not in its employment, nor acting under its directions, and further pleaded that the paper was delivered in the same manner and by the same method that it had delivered papers in the city of Houston for ten years, and in the way in which such delivery of papers is almost, if not altogether, universally made in cities of the population of Houston, and which by long experience has been found to be safe, efficient, and expeditious; that it is well-nigh the universal custom among newspaper managers to have boys move rapidly from one part of the city to another and throw papers into yards or onto the porch or steps of residences, and pleaded that such method of delivery is the only one necessarily available, and that if plaintiff was injured, such injury was the result of an accident against which skill, care, and foresight could not provide, and which was not possible to be foreseen, and the injury and accident was not such that it might necessarily have been expected to have occurred.

Upon trial had before a jury there was a verdict for plaintiff, specifying different amounts on different grounds, the whole aggregating $10,000. Judgment in accordance with such verdict was rendered by the court.

[1, 2] Appellant requested the court to charge the jury as follows:

"The evidence in this case is not sufficient to establish the allegations of plaintiff's petition, and therefore you will return a verdict for defendant."

The court refused to give such charge to the jury, and appellant has made the action of the court in so doing the ground of its first assignment of error.

Appellant's contention under said assignment is: First, that the requested charge should have been given because the evidence indisputably shows that more than 20,000,000 papers had been delivered in the same manner as the one in question in this suit, without injury following to any one, and that plaintiff's injuries were the result of an accident which could not be foreseen or contemplated as likely to occur; second, where injury and damages are alleged to be the result of an accident occurring in a certain way, and such way is charged to constitute "negligence," and it is indisputably proved that the act was done in order to effectuate a lawful purpose, and that it was done in the identical way in which such purpose was invariably carried into effect by ordinarily prudent persons engaged in the same line of business, and that such way had by long experience and invariable custom been found safe, expeditious, and efficient, and that the actual experience of the parties charged with "negligence" in doing the act had, pursuant to usage and custom and the necessities of the business, done the act in the same way about 22,000,000 times before the accident, and about 10,000,000 times since, without injuring any person, and had done the same act approximately 100 times at the place of the accident, without injury to any person, such fact conclusively rebutted the charge of "negligence," and defendant was entitled to have the jury so instructed, and the court erred in refusing the instruction.

The fact that appellant had caused 20,000,000 papers to be delivered by boys throwing them into the yards and upon the porches of subscribers, and that such manner of delivery was practically the universal manner of making such deliveries by publishers, and that no injury to any person, similar to that of appellee, had theretofore occurred, so far as known, is not disputed. But such admission is not an admission that to throw a tightly rolled paper, so as to make it a compact body, 75 or 100 feet among and upon women and children, was not an act of negligence. The existing conditions and surroundings at the time of the throwing of such papers we think should

be considered in determining whether or not such throwing was negligence upon the part of the thrower. We think there was sufficient evidence to support the finding by the jury that the act of the delivery boy in this case throwing said paper under the conditions and surroundings shown to have existed at the time and place of the alleged accident was negligence, and that a person in the exercise of ordinary care and prudence might reasonably have anticipated that some injury to some of those shown by the evidence to have been on the porch might result from such act. We think the test as to whether or not appellant should be held to be guilty of actionable negligence under the facts of this case is, could a cautious and prudent person in the same or similar situation as appellant's delivery boy was at the time he threw the paper in question, as he threw it, have reasonably anticipated that some one would probably be injured from his act, and not as to whether he might anticipate the exact injury and the extent of same, which might result from such act. It has never been held, and it is not the law, that a defendant must have anticipated the precise and exact injury or precise person receiving the injury, but it is sufficient if he ought to have anticipated that the act causing the injury was calculated or likely to do some injury to some person. Moore v. Northern Tex. Tr. Co., 41 Tex. Civ. App. 583, 95 S. W. 652; Railway Co. v. Currie, 91 S. W. 1100; Railway Co. v. Morgan, 49 Tex. Civ. App. 212, 108 S. W. 724; Railway Co. v. McComus, 36 Tex. Civ. App. 170, 81 S. W. 760; Railway Co. v. Wood, 63 S. W. 164. In Railway Co. v. McComus, supra, it was held that the fact that an act of negligence produced an injury to another in a manner so unusual that it was not to be expected or anticipated does not relieve the party responsible from liability when such act was one likely to cause injury in a way that might be foreseen. In Railway Co. v. Wood, supra, it is held that where a piece of coal fell off a passing train and injured a section hand, who was standing near the track, it cannot be contended that the company was not liable because the injury was not such a result of defendant's negligence as might usually have been expected.

We conclude that the trial court properly refused the requested charge and therefore overrule the first assignment of error.

[3] Appellant's second assignment is as follows:

The court erred in refusing special charge No. 3 asked by defendant, reading as follows: "The burden of proof is on the plaintiff to prove the allegations of her petition substantially as alleged, and she is required under the law to prove by a preponderance of the evidence: First, that the paper was thrown by an employé of the defendant company; second, that it was thrown in such a way and under such circumstances as to constitute the act 'negligence' as negligence has been defined in this charge; third, that plaintiff was injured by being struck by said paper substantially as by her alleged in her petition, and that the blow from said paper was the proximate cause of such injuries, as the term 'proximate' cause has been defined in this charge."

Appellant's contention is that this charge was important to defendant because the crucial and controlling questions in the case were: First. Was the party who threw the paper in the employment of the defendant? Second. Was the paper thrown in such way as to make the act "negligence"? And third. Was the blow from the paper the "proximate" cause of the alleged sufferings of the plaintiff? That each of these questions were extremely doubtful, and were strongly contested, and there was evidence by a reputable physician, a witness for plaintiff, to the effect that there were other causes to which the condition of plaintiff might be attributed, hence the justice and necessity of having such issues distinctly put before the jury, and of having it made clear to the jury what was essential to be proved.

The court in his main charge instructed the jury as follows:

"The burden is upon the plaintiff to prove, substantially, by a preponderance of the evidence, the facts alleged in her petition."

"If you believe from the preponderance of the evidence that on or about the 31st day of July, 1911, an agent, servant or employé of the defendant threw a copy of the Houston Chronicle toward the plaintiff, and that the same struck her and injured her substantially as alleged, and if you further believe from the evidence that the act of such servant, agent or employé of defendant in throwing said paper, if he did, constituted negligence upon his part, as the term has heretofore been defined to you, and that such negligence, if any, was the proximate cause of the injury sustained by the plaintiff therefrom, as the term 'proximate cause' has heretofore been defined to you, then you will find your verdict in favor of the plaintiff as against the defendant, and assess her damages as hereinafter instructed."

"If, on the other hand, you do not believe from the preponderance of the evidence that the plaintiff was struck and injured as alleged by her, or do not believe that such striking was caused by the act of a servant, agent or employé of the defendant, or do not believe that in throwing said paper and striking plaintiff, if you find such to be the fact, the servant, agent or employé, if any, of the defendant, was guilty of 'negligence' as that term has been hereinbefore defined, or do not believe that the injuries, if any, of the plaintiff were proximately caused by the act of such servant, agent or employé, if any, or do not believe that the injury to plaintiff, if any, was one which might have been reasonably foreseen by a person of ordinary prudence, in the light of the attending circumstances, as likely to result from such an act, then, in either one or more of such events, let your verdict be for the defendant."

We think the charge of the court fully and fairly, especially as to defendant, presents the issues in the case, and that he properly refused the requested charge set out above.

By the third and fourth assignments it is insisted that the trial court erred in refusing to give appellant's special requested charges 4 and 5, which are as follows:

"Under the law the plaintiff is required to prove the allegations of her petition on which she

bases her right to recover by a preponderance of the evidence, and if the evidence does not preponderate in her favor as to the allegation that an employé of the Chronicle threw the paper, or if it does not preponderate in her favor as to the allegation that the paper was negligently thrown, then in contemplation of law the plaintiff has failed to prove such allegation, and in event she so fails as to either of the grounds mentioned above in this paragraph, you will find for defendant and inquire no further."

"As you have been instructed, the evidence must preponderate in favor of the plaintiff upon every allegation which it is necessary for her to prove in order to recover, and if you find that the evidence does not preponderate, but is evenly balanced as to any allegation which you are instructed it is necessary for her to prove in order to recover, you will find for defendant."

We think the court's main charge above quoted sufficiently covers the instructions asked by the charges refused. We therefore overrule the third and fourth assignments.

By the fifth assignment appellant insists that the court erred in refusing to give to the jury its special charge No. 6. We have carefully examined and considered such special charge and also paragraphs 10 and 11 of the court's main charge, and we conclude that said paragraphs 10 and 11 fairly and fully present the matter raised by appellant's said special charge, and therefore the court did not err in refusing said special charge.

What has been said under the first assignment fully answers the contention made by appellant's sixth and eighth assignments, and therefore it is unnecessary to further discuss the matter presented by said assignments, and besides, the matters raised by the charges, the refusal of which complaint is made, were substantially covered by the court's charge. They are therefore overruled.

[4] We are not called upon to consider the seventh assignment of error, by which it is insisted that the court erred in refusing appellant's special charge No. 8, as the statement under such assignment does not show that the action of the trial court in refusing to give such charge was excepted to, nor are we referred to the pages of the record where such bill of exception, if any, can be found. Rule 31 prescribed by the Supreme Court for the Courts of Civil Appeals (142 S. W. xiii) provides that to each proposition in appellant's brief there shall be subjoined a brief statement, in substance, of such proceedings, * * contained in the record, as will be necessary and sufficient to * * support the proposition with reference to the pages of the record. Under article 2061 of the Revised Civil Statutes of 1911, this state, litigants are required to reserve, by proper bill of exceptions, their exceptions to the action of the trial court in refusing special charges, or else such exceptions are to be regarded as waived. Therefore unless the record shows that such bill of exceptions was reserved, the assignment that the court erred in refusing a special charge will not be considered by the appellate court. This court will not search through the record to find whether or not such bills have been reserved. However, we have considered the assignment and overrule same, because the instructions requested by said special charge, material to the issues involved, were substantially given in the court's main charge.

[5] Appellant's ninth assignment is as follows:

"The court erred in allowing, over defendant's objection, counsel for plaintiff, while addressing the jury in the closing argument, to read so much of the depositions of Forrest Longstreth as contained the statement that Mrs. Norsworthy told him the day after the accident that he had hit a lady the day before, without reading the further question as to what the witness replied to the statement of Mrs. Norsworthy, and the objection of plaintiff to the question, and the action of the court in sustaining the objection, all of which had been read to the jury, the omission of counsel to read the question, what the witness said in reply to the charge, and the objection of plaintiff, leaving the jury to believe that the witness acquiesced in and admitted the truth of the statement that he had thrown the paper, when in fact he did not do so."

There is no merit in said assignment. It was not improper for counsel for appellee in argument to refer to or quote any portion of the testimony of a witness without quoting any other portions thereof, and neither the court nor opposing counsel has the right to so demand. If counsel for appellant wanted the reply made by the witness to Mrs. Norsworthy, as testified to by him, repeated to the jury in argument, it was his privilege to quote the same, but he nor the court had any authority to compel counsel for appellee to do so.

The substance of appellant's tenth and eleventh assignments is that the court erred in overruling the defendant's motion for a new trial: First, because the great weight and preponderance of the evidence as to whether appellant's delivery boy threw the paper that caused the injury to plaintiff was against such conclusion; and, second, that the paper in question was thrown from a point 121 feet from where the plaintiff was sitting; that it weighed only three ounces; and that the blow from the paper did not cause an abrasion of the skin, and therefore the physical facts refute the contention that plaintiff was injured as alleged by her.

[6] Replying to the first contention under said assignments we here give the substance of the testimony of the following witnesses as to who threw the paper that caused the injury complained of, to wit:

Mrs. Stearn: "At the time of the accident, I was on the front porch of our house; that porch extends all the way across the front end of the house; at the time of the accident one of Mrs. Matthews' daughters and myself were sitting on the bench, facing La Branch street; and my sister, Mrs. Lemmon, had her back to La Branch street, and Mrs. Matthews was facing La Branch. * * * The paper was usually thrown toward the house by a big boy. * * * When he threw the paper he was at the corner of Bremond and La Branch, near the corner of the Norsworthy property; between 4:30 and 5 o'clock we were sitting on the gallery, and he

threw the Norsworthy paper so close that I hollered for him not to throw the other paper; I thought he was going to hit me; he threw Mrs. Norsworthy's paper so close I thought he was going to hit me, and I screamed to him not to throw our paper, but in the meantime he threw the other paper that hit Mrs. Lemmon. This boy that delivered the Chronicle that afternoon had some one with him; he had a little boy with him; the big boy threw the paper, and he was the one who usually delivered the paper on that route. I was sitting on the bench facing La Branch street at the time of the accident. * * * He had not thrown the paper when I hollered to him, and he was not prepared to throw the paper with his hand drawn back."

Mrs. Matthews: "I saw the boys that delivered the Chronicle as they came up on their delivery route on this particular afternoon. * * * The big boy that threw the paper was the boy who usually delivered my Chronicle to my house. That big boy had been delivering the Chronicle to me pretty near as long as I had lived there, and I moved there in May, 1911. * * * My paper was thrown from the corner; rolled up tight and thrown from the corner. The big boy threw the paper; I saw him throw it. * * * I sat right this side of Mrs. Lewis, and when I was looking back—we were sitting with our backs to the street (meaning La Branch street) when I happened to look around—they were coming with the paper, and he threw it, and I dodged, and I knew it was coming, and it hit her right on the head. * * * Mrs. Lemmon and I were both sitting facing the house, because the sun was so strong, and I had my left side toward the boy. The paper was thrown with much force; it came very strong. * * * I identified those boys as a little boy and a big boy. I remember, it was the big boy that threw the paper, because I saw him throw it. We were all there, and I was looking right at him, and Mrs. Stearn hollered, 'Don't throw,' but he threw it just the same."

Miss Virginia Matthews: "Mrs. Stearn, Mrs. Lemmon, my mother and myself were sitting on the porch at the time of the accident to Mrs. Lemmon. * * * I saw two boys. The paper was thrown by one of them. One of them was a big boy, and one was a little boy; the big boy threw the paper. I saw him throw it. He threw the paper from that corner on Bremond, I think it is, there at Mrs. Norsworthy's corner. My mother was sitting next to Mrs. Lemmon waiting to see the paper come, and she dodged, and it went right on over and hit Mrs. Lemmon. * * * Mrs. Lemmon was sitting with her back to La Branch street. I heard Mrs. Stearn say, 'Don't throw the paper,' or something like that, before he threw the paper; he was just about ready to throw it when she made that remark, and he threw it after she said that. * * * The little boy was in the cart and the big boy was out."

Miss Helen Matthews: "I was on the porch on the afternoon, and saw him deliver the Chronicle that afternoon Mrs. Lemmon got hurt. There were two boys with the papers; one was a big boy and one was a small boy. I don't know which boy it was that was in the habit of delivering the Chronicle around there. On this particular afternoon the Chronicle was thrown from the corner; the big boy threw it; I saw him when he threw the paper. I heard Mrs. Stearn halloa to him, but she holloaed to him before the paper was thrown, as he was about to throw it."

Unquestionably the foregoing testimony was sufficient to support a finding by the jury that the big boy, the delivery boy of appellant, threw said paper, regardless of the testimony of other witnesses to the contrary.

[7] Replying to the second contention under said assignments, we find that the undisputed evidence shows that the paper was thrown forcibly from some point 100 or more feet from where the women and children were sitting on the porch; that it reached them and struck plaintiff, Mrs. Lemmon, on the head, and knocked out one of her teeth, and for a time rendered her unconscious, and that by reason thereof she was confined to her bed for about two weeks, and practically all the time from the date of the accident, on July 31, 1911, until she went to San Antonio on the 22d day of November, 1911; that before she suffered such injury she was in good health; that after she suffered the injury she suffered intense pain in her back, head, face, eyes, and spine, and that she suffered from extreme nervousness, sleeplessness, loss of appetite, loss of weight, strength, and memory, etc. We find testimony in the statement of facts to support a finding of the following facts: That since the injury, and as a result of it, she has been treated by Dr. Eckhardt, of Houston, Dr. Jackson and Dr. ———, of San Antonio, Dr. Bernard Sachs, of New York City, and Dr. Whitmore Steele, of Phœnicia, N. Y. She has also been treated by Dr. Minnie Archer, deceased, and by Dr. James A. Mulle, eye specialists, and by Dr. Perkins and Dr. Greenbaum, dentists. At the time of the trial she was still under the constant treatment of Dr. Eckhardt and Dr. Mullen.

In the month of November, following the injury in July, her condition showing no improvement, Dr. Eckhardt advised taking her to San Antonio, in hope that the change of climate might benefit her. She was not able to travel alone, and her sister, Mrs. Stearn, and her brother, Mr. Sol Harris, took her; Mrs. Lemmon agreeing to pay her sister's actual expenses of the trip in consideration of the latter acting as her nurse. She was kept in San Antonio five weeks, she and her sister staying at the St. Anthony Hotel, and she was forced to have medical treatment while there. She did not seem to get much benefit from her stay in San Antonio, and, failing to improve after her return, the doctors attending her advised that she be taken to New York for a change of climate and surroundings, and for treatment by Dr. Bernard Sachs, a well-known and experienced nerve specialist of New York City.

She was taken to New York in the summer of 1912 by her brother, Mr. Harris, and her sister, Mrs. Lewis. She was not able to travel alone, and Mrs. Lewis volunteered to go with her, and Mrs. Lemmon agreed to pay her actual expenses of the trip in consideration for the services of nurse and attendant, which Mrs. Lewis would render her. She was taken to New York City and placed under the care and treatment of Dr. Sachs, and she and her nurse stayed at various places in and near New York City, as directed by Dr. Sachs; the whole trip consuming about five

months. While staying in Phœnicia, N. Y., under the direction of Dr. Sachs, she suffered, on August 6, 1912, one of the worst attacks that she had experienced since the injury, and Dr. Whitmore Steele of that place was called in and attended her for three days. She was very much benefited by this trip, but after her return to Houston began to relapse, so that by the summer of the next year (1913) her health had returned to its previous bad condition. Mrs. Lemmon's doctors advised her brother and sisters that if they did get her away from Houston she might die, and following their advice they again sent her to New York for change of climate and further treatment by Dr. Sachs. She made the trip to New York with friends, who were going from Houston, and there met her sister, Mrs. Stearn, who stayed with her until her return to Houston, no charge being made for her sister's expenses. This trip consumed about two months. She was again benefited by the trip and treatment, but again relapsed from the benefit thereof, and by the following summer (1914) her condition was such that Dr. Eckhardt and Dr. Mullen ordered that she be sent to Colorado. She was accompanied on this trip by her sister-in-law, Mrs. Harris, who paid her own expenses, and the trip consumed about two months. Her condition became very bad again before the summer of 1915. She would not have taken the trips but for the condition of her health, and the insistence of her doctors and her family that she do so, in the hope that she could improve her health and probably recover.

Drs. Sachs, Mullen, and Eckhardt testified at the trial, and they all attributed Mrs. Lemmon's condition to the injury of the blow which she had received, as above detailed. Dr. Sachs, in his deposition taken September 25, 1913, said that in his opinion complete recovery would ensue within a period from two to three years; that it was possible that her condition would be permanent, but not probable. Dr. Steele, by deposition, said that it was impossible to state accurately what time might elapse before she recovered, as much depended upon the nerve organization of the patient; that it was possible and probable that her condition would be permanent. Dr. Eckhardt testified that her condition was not any better at the time of the trial that it had been at any time following the injury, and that "the general history of cases of this kind is that if they have continued for as long as four years, without any improvement, the probabilities are that the condition will continue for a long length of time." Dr. Eckhardt further testified that if a projectile weighing several ounces struck a person in the face or around the temple, some injury such as that suffered by appellee would naturally be expected to result, if it were thrown hard enough; and that if the blow was hard enough to break a tooth and cause the bruise which he found upon Mrs. Lemmon's mouth, it would be of sufficient force to cause just such an injury as resulted to Mrs. Lemmon. We think this testimony amply sufficient to support a finding that the blow from the paper thrown caused the injury from which the plaintiff suffered. We therefore overrule the tenth and eleventh assignments.

By appellant's twelfth assignment it is insisted that the finding of the jury as to railroad fare, Pullman reservations, and meals on trains, expended by plaintiff, as alleged by her, is contrary to the evidence, and is for a greater sum than claimed by plaintiff in her petition by $19.50.

[8] Appellant's proposition under this assignment is that a verdict in the face of definite itemized pleadings, and specific testimony, for a sum of $19.50 greater than the amount claimed by plaintiff, is conclusive evidence not only of recklessness and indifference to the rights of defendant, but also of prejudice and passion, and such being true, the judgment based on such verdict should be reversed.

We do not think there is any merit in such contention. We cannot conceive that a jury moved by prejudice and passion would exhibit such prejudice and passion by adding so small an amount as $19.50 to a verdict of $10,000, or that their finding a verdict for such small amount in excess of the sum claimed by plaintiff in her petition is any evidence of either prejudice or passion; but we conclude that such finding must have been the result of a mistake in stating and summing up the various items claimed and proven. It is shown that after the verdict was rendered appellee entered a remittitur of $25.50, which was more than the sum claimed by appellant to have been erroneously found by the jury. The assignment is overruled.

By appellant's thirteenth assignment it is insisted that the trial court erred in not granting defendant a new trial, because the finding of the jury for hotel bills, meals, and incidental expenses of plaintiff at San Antonio, New York, and other places, is unreasonable and unjust, wholly out of reason under all the facts and circumstances, and that such finding is contrary to the evidence and to the justice of the case.

There was testimony by several witnesses that the money spent for hotel bills, meals, railroad fare, Pullman accommodation, medicine, doctors' bills, etc., was reasonable and necessary for the proper care and treatment of the plaintiff, and the jury so found, and while such sums alleged and proven to have been paid out seems to us large, we are not prepared to say that the evidence does not support the findings of the jury that such expenses were necessary and reasonable, and therefore we cannot sustain appellant's assignment.

While it is to be regretted that such serious and unusual damage resulted from such seemingly slight act of negligence on the part of appellant's delivery boy, we are not for that reason alone authorized to reverse the judgment based upon the findings of a jury supported by evidence; and as we find no error in the trial of the case, the judgment of the trial court is affirmed.

Affirmed.