## Texas & New Orleans Railroad Company v. Julia Dean Walker et al.

### Decided January 21, 1910.

**1.—Master and Servant—Railroad Company—Negligence—Moving Train without Warning.**

Where a switchman was killed by the moving without warning of a train of "bad order" cars which he was coupling to an engine, evidence reviewed and held sufficient to support a finding that the foreman of the deceased was negligent in not preventing the moving of the train by another and different switch crew and in failing to apprise the deceased of the danger from the approaching switch engine; that the crew of the switch engine was negligent in moving the train of cars on which deceased was engaged without first ascertaining whether the deceased or some other switchman was working on the same and in such situation as would render the moving of the train dangerous to him; and that the railroad company itself was negligent in not promulgating reasonable rules governing the switching of cars by different crews in its yards, and that the deceased was not guilty of contributory negligence and did not assume the risk which resulted in his death.

**2.—Trial—Evidence—Harmless Error.**

The admission of improper testimony is harmless error when other testimony to the same effect is already before the jury without objection. Rule illustrated.

**3.—Same—Practice.**

An appellant can not complain of the admission of improper testimony when no objection was made until after the same was in, and no motion was made to exclude it.

**4.—Same.**

An objection to testimony can not be urged for the first time in the appellate court.

**5.—Master and Servant—Expert—Hypothetical Question.**

Under the circumstances shown by the evidence in this case a hypothetical question to an expert witness as to what a switchman, while working between cars, had the right to expect from his foreman in the way of protection, was proper and warranted by the evidence.

**6.—Same—Charge—"Reasonable Care."**

The use of the phrase "reasonable care" instead of "ordinary care" in a charge upon the issue of negligence was not subject to the objection that it was calculated to confuse and mislead the jury. The phrases are convertible terms.

**7.—Same—Negligence—Custom and Usage.**

Custom and usage can not be made the standard of care in an issue of negligence on the part of the master in the conduct of his business.

**8.—Death—Measure of Damages—Charge—Assumption of Pecuniary Loss.**

Where the evidence was undisputed that the deceased was industrious and economical and applied his earnings to the support of his wife and children, the court had the right to assume that the wife and children had suffered loss and to charge the jury that they were entitled to compensation for his death.

**9.—Same—Charge—Reference to Grief and Sorrow.**

It can not be assumed that a correct charge upon the elements of damage

to be considered by a jury in a suit for the death of a husband and father, was prejudicial to the defendant because it referred to the grief and sorrow of the living, the loss of the society and companionship of the dead, and the mental and physical pain suffered by the deceased, and told the jury that such elements of damage should be eliminated in estimating the loss of the plaintiffs.

**10.—Death of Switchman—Verdict not Excessive.**

A verdict for $20,000 in favor of a wife and two children for the death of their husband and father, held, not excessive under the facts of this case.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell

*Baker, Botts, Parker & Garwood* and *A. L. Jackson,* for appellant. —In support of the first, second, third, fourth and fifth assignments of error, the appellant cited Prather v. McClelland, 76 Texas, 588, and Hicks v. Galveston, H. & S. A. Ry. Co., 96 Texas, 355.

The court erred in refusing to permit the witness A. S. Johnson to answer the following question, propounded to him by the defendant's counsel, to wit:

"Q. Would it or not, when an engine with the knuckle out of the drawhead, the front end, heading upon "13," and the switchman who was directing its movements, having the power to stop it, would it or not have been safer, in view of his knowledge that the cars on the track were liable to be moved without notice, to have stopped the engine in three or four car lengths back from the car to which it was to be coupled?"

To which question and the answer thereto the plaintiff objected, upon the ground that it was an attempt to usurp the power of the jury; that it was a question for the jury to decide; which objection was sustained, and the witness was not permitted to answer; which answer would have been to the effect that it would have been safer; which ruling, on the part of the court, was error. Fort Worth & D. C. Ry. Co. v. Thompson, 75 Texas, 503; San Antonio & A. P. Ry. Co. v. Brooking, 51 S. W., 540; St. Louis, A. & T. Ry. Co. v. Johnston, 78 Texas, 540; Austin Rapid Transit Ry. Co. v. Groethe, 31 S. W., 197; Galveston, H. & H. Ry. Co. v. Bohan, 47 S. W., 1050; Angle v. Young, 25 S. W., 800; Galveston, H. & S. A. Ry. Co. v. Croskell, 6 Texas Civ. App., 160.

Under the undisputed facts in this case, the foreman, Eschenfelder, as a man of ordinary prudence, could not reasonably have foreseen that Walker would likely bring his locomotive in such close proximity to the cars on track 13, to which it was to be coupled, before having the knuckle replaced in the locomotive drawhead, and then place himself in the position of danger, without which the injury would not have occurred; and hence, the necessity of anticipating and guarding against such contingency by going or sending someone to the west end of the yard for protection was not foreseen or realized by the foreman in time to prevent the accident, and the failure of the foreman to do so sustained no proximate relation to the injury, and was not actionable negligence on the part of defendant. Texas & Pac. Ry. Co. v. Bigham, 90 Texas, 225; Texas & P. Ry.

Co. v. Reed, 88 Texas, 448; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 279; 16 Am. & Eng. Ency. Law (1st ed.), 436 et seq.

In a case where it is necessary for the jury to find upon the issue of "ordinary care," that expression having been explained in other portions of the court's charge, it is error to omit such issues and submit in lieu thereof the question of "reasonable care," such expression not having been defined nor being necessarily the equivalent of ordinary care, and thus being calculated to confuse and mislead the jury. Texas & P. Ry. Co. v. McCoy, 90 Texas, 264; International & G. N. Ry. Co. v. Bell, 75 Texas, 50; Houston & Texas Ry. Co. v. Oram, 49 Texas, 341; Missouri Pac. Ry. Co. v. Lyde, 57 Texas, 509; Pierce on Railroad Companies, 370; 5 Rapalje & Mack's Digest, p. 77.

The deceased, S. H. Walker, having entered into the service as a switchman, assumed the risk of such dangers and injuries as were ordinarily incident thereto in connection with said service, conducted according to the established customs and usages, and he assumed the risk of those conditions and dangers which he knew of, and which were obvious to him, and would necessarily have been known to him, in the performance of his duties. Texas & P. Ry. Co. v. French, 86 Texas, 98; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 702; Green v. Cross, 79 Texas, 131; Gulf, C. & S. F. Ry. Co. v. Williams, 72 Texas, 164; Texas & P. Ry. Co. v. Bradford, 66 Texas, 736; Bailey on Master's Liability for Injury to Servants, 158 et seq.; Wood on Master and Servant, sec. 326.

*Lovejoy & Parker,* for appellees.

McMEANS, Associate Justice.—Julia Dean Walker brought this suit for herself and as next friend for his minor children, Clarice Catherine and James Howell Walker, against the Texas & New Orleans Railroad Company, Houston & Texas Central Railroad Company and the Galveston, Harrisburg & San Antonio Railway Company for damages growing out of the injuries and death of her husband, Samuel H. Walker, the father of said minors, while he was in the employment of appellant in the capacity of switchman in the railroad yards in the city of Houston.

The plaintiff alleged substantially that the deceased, Samuel H. Walker, at and prior to the time of his death, was a practical and experienced switchman in the employment of the defendants, and on the occasion of his injury and death was engaged at night in the service of the defendants in their yard in the Fifth Ward of the city of Houston, and that while he was engaged with a fellow switchman in replacing the knuckle in the drawhead of the switch engine with which he was working, in performance of his duties, the crew of the switch engine working in the west end of the yard pushed cars against the one which deceased was about to have coupled to his engine, so that this car pushed against and caught plaintiff between its drawhead and that of the engine, crushing him and causing his death, for which damages were sought.

Liability is predicated upon the negligence of defendants as the proximate cause of the injury and death, as follows:

"(a) That those of defendants' employes in charge of the said engine and car or cars knew, or in the exercise of ordinary care would have known, that the crew of which said Walker was a member were about to couple the engine onto the string of cars at the opposite end, and that notwithstanding such knowledge or means of knowledge they brought the said engine or car or cars into contact with the said string of cars, setting the same in motion, when they knew or should have known in the exercise of ordinary care that plaintiff, or some other member of said crew, would probably be injured by being caught between the engine and said car, or injured in some other manner under the circumstances.

"(b) That those of defendants' employes in charge of the said engine or car or cars ran the same against the said string of cars, setting the same in motion, without taking any pains, as was their duty to do, to see that no employe or employes of defendants were coupling or about to couple an engine or car to the opposite end of said string, under circumstances which would expose such person or persons to the danger of being injured by thus setting the cars in motion.

"(c) That if the employes in charge of said engine or car or cars, before bringing the same into contact with the said string of cars, as aforesaid, gave any signal of their purpose so to do to any member of said Walker's crew, then such member did not communicate such signal to said Walker, or otherwise make known the same to him, and said Walker was ignorant thereof, and they brought the said engine or car or cars into contact with the said string of cars, without receiving any signal from said Walker or any member of his crew that they might do so; or if any member of the said Walker's crew did give a signal to the said crew, authorizing the bringing of the said engine or car or cars into contact with the said string of cars, then the signal was given without signal or authority from said Walker so to do; and plaintiffs say that, according to the established usage and custom prevailing in the said yard, under similar circumstances, the said string of cars could not be rightfully moved, except upon a signal given by the said Walker, or until it was known that he had removed himself from between the said car and engine, and was in a place of safety.

"(d) That it was the duty of the foreman of the switching crew to which said Walker belonged to take means to safeguard him while he was between the engine and car, for the purpose of making the coupling by himself, keeping or causing some member of the crew to keep a lookout to prevent any other switching crew from bringing any engine or car or cars into contact with the opposite end of the said string of cars, or to give said Walker timely warning thereof, or to take other appropriate means for his protection; but said foreman wholly failed to perform his duty in said respects; or, if he did perform it to the extent of ordering a member of the crew to keep such lookout and give such warning, or if any member of the crew in the discharge of his duty undertook without such order to keep

such lookout and give such warning, he wholly failed to perform his duty in such regard, or if he did perform his duty in such regard, then the switching crew failed or refused to obey his signals not to bring the engine or car or cars into contact with the said string of cars; and if he gave any member of said Walker's crew warning that an engine or car or cars was about to be brought into contact with the said string of cars by signal or otherwise, then said member receiving such warning or signal failed to give him timely notice thereof.

"(e) That the business of switching engines and cars in the said yard under the circumstances the deceased was required to switch them, was a complex business, attended with great danger to the employes engaged therein, and the reasonable safety of the switchmen engaged in the said work required that defendants should have and enforce a written or printed rule or regulation requiring that the switching crews in the said yard, before bringing an engine or car or cars into contact with a string of cars, should before doing so, ascertain that there was no other switching crew about to bring an engine or car or cars into contact with the opposite end of the said string, or at work at the end of said string under circumstances which would expose such employes or any of them to the danger of being injured by the string of cars being suddenly moved; or to have some other appropriate rule or regulation for the safe-guarding of their employes under such circumstances, but defendants wholly failed to have such written or printed rule or regulation, or any rule or regulation whatever for such purpose."

The defendants answered by general denial and pleas of assumed risk and contributory negligence, and by a further plea specially denying that defendants were negligent in failing to establish or promulgate proper rules or regulations for the protection of deceased under the circumstances.

Before the trial the plaintiffs dismissed their cause against the Galveston, Harrisburg & San Antonio Railway Company and against the Houston & Texas Central Railroad Company, and the trial proceeded against the Texas & New Orleans Railroad Company as sole defendant, and resulted in a verdict and judgment in favor of plaintiffs for $20,000 apportioned as follows: One-half to the plaintiff, Julia Dean Walker, and one-fourth to each of the minors. From this judgment the railroad company has appealed.

The evidence in the record justifies the following conclusions of fact: The deceased Walker was in the employment of the Texas & New Orleans Railroad Company in the capacity of switchman in its yards in Houston. His crew consisted of the foreman, Eschenfelder, and one, Swanson, and himself, besides the engineer and fireman of the switch engine. The tracks in the yards ran east and west, and Eschenfelder's crew was working at the eastern end. Among the tracks was one known as No. 13, and this track was used for the purpose of holding cars that came off the railroad in bad order, and these bad order cars were permitted to remain on said track until such time as it became desirable to place them on the repair tracks for repairs. Track No. 13 was sufficiently long to hold forty-five

cars, and it was open at each end, so that cars could be switched thereon from either end. On the night that Walker was killed there were about forty-five cars on this track, most if not all being bad order cars. Eschenfelder directed his crew to take out some of these cars for the purpose of placing them on the repair track, and seventeen of them were taken out at the east end and placed. The next car was one without a drawbar, and in trying to take this car out it became necessary to remove the knuckle out of the drawhead of the engine, so that the car could be "hooked up" to the engine. Eschenfelder directed that the knuckle be removed and assisted his men in removing it. The knuckle was then laid on the footboard of the engine, and while the car was being hooked to the engine Eschenfelder directed Walker and his coworker, Swanson, to take the car to a designated place and leave it and to return on track 13 (the purpose being to remove the other cars therefrom), saying that while they did so he would go down the line and look after the other cars on the track.

After hooking up the car to the engine the engineer began pulling the car out, but the fastenings parted, and after this occurred a second time Swanson left the engine to find material with which to make the fastenings secure, but before his return Walker succeeded in hooking up the car securely, and, without Swanson, went with the engine and car to the place where it was to be left and returned on track 13 as directed by Eschenfelder, stopping the engine within a few feet of the car next to be removed. Swanson got upon the engine a short distance from the place where it stopped and while the engine was in motion. When the engine stopped Walker and Swanson began to replace the knuckle in the engine drawhead, Walker standing immediately in front of the drawhead with his back toward the car and lifting the pin, and Swanson was just in the act of lifting the knuckle from the footboard, when a switch engine and crew operating in the western end of the yards shoved a string of cars in from the west on track 13, striking the bad order cars remaining thereon and running a car against Walker, catching him between the drawheads of the engine and the car, and injuring him to such an extent as to cause his death in a short while.

When Walker and Swanson began to readjust the knuckle, Eschenfelder had reached a point of the sidetrack 13 about the distance of ten car lengths west of where they were at work. He knew that the engine had come back on 13, saw the lanterns of the two switchmen sitting on the ground and believed that they were readjusting the knuckle and that the engine was about a half car length from the car nearest to it. He saw the other engine approaching the western end of track 13, and while he did not know it was coming in on track 13 he knew it was likely to do so, but gave no signal to it to stop, nor did he apprise or attempt to apprise Walker of its approach. While an engineer of a switch engine will not ordinarily obey a signal given by a member of a crew other than his own, it is the general rule that he will obey a stop signal by whomsoever given; and had Eschenfelder given a stop signal to the crew coming in from the west in reasonable probability the signal would have been obeyed

and the injury to Walker averted. Eschenfelder knew that Walker was in a place which would be rendered dangerous by the shoving of cars against those standing on 13, but notwithstanding, gave no signal to the other crew or warning to his own to avert the danger, and notwithstanding that Walker, knowing that he had gone toward the western end of the track, had the right to rely upon him for protection from danger from that source.

The removal of bad order cars from track 13 involved extra hazard, in that, because of the absence of drawheads from some of the cars, the automatic couplers would not work, and·it was frequently necessary for the switchman to go in between the engine and a car or between cars to connect them in different ways, and not infrequently it would become necessary for men to go under the cars in effecting a coupling. This was known to the switch engine crew that shoved the cars in from the west which resulted in Walker's death, yet in doing this they took no precaution and observed no care, as they should have done, to see whether anyone was at work at the other end of the track and likely to be injured by the moving of the cars, although they might have known, by the exercise of ordinary care, that another crew was at work on the western end of the track, and could have reasonably anticipated that Walker or some other switchman would likely be injured by the moving of the cars if moved without warning.

The yards of defendant were extensive, being several miles in length, including many tracks, and in which were handled more than seventy thousand cars every month, requiring the continuous service night and day of seven switch engines and as many switching crews, each crew operating without reference to any other, each looking out for its own safety, but without regard to the safety of any other. In handling cars there was no practice with reference to placing cars on any special track other than for the particular crew to see that there was sufficient room on a track to hold the cars then being switched, and when this was ascertained the cars would be so placed, even though to do so required the shoving against and moving of cars already on the track without reference to what some other crew might be doing in the same regard at the other end of the track. The business was complex and therefore extraordinarily dangerous, and this is specially true with reference to the placing upon and removal of bad order cars from track 13, and imposed upon the railroad company the substantive duty to establish and promulgate reasonable rules for the protection of switchmen engaged as Walker was at the time of his injury and death, yet no such rules were established and promulgated.

Under the foregoing we think the jury had the right to conclude that Eschenfelder, Walker's foreman, was negligent in not stopping the crew at the western end of track 13 before it shoved the cars against and killed Walker, and in failing to apprise Walker of the approach of the cars and warn him of his danger; that the crew at the western end was negligent in shoving the cars in on said track 13 and starting the cars standing thereon in motion without first ascertaining that Walker or some other switchman was not working

on said track in a situation that would likely result in injury by the moving of the cars, and that the railroad company was negligent in not establishing and promulgating reasonable rules governing the switching of cars by different crews in its yards, and especially with reference to the placing upon and removal of cars from track 13, and that the negligence of defendant and its employes in the respect stated proximately resulted in Walker's death.

We further conclude that Walker was not guilty of negligence in taking the position assumed by him between the drawheads of the engine and car in attempting to adjust the knuckle, nor in attempting to replace the knuckle at the place he did instead of a place further removed from the car, and that he did not assume the risk of the foreman's negligence in failing to stop the engine and cars approaching from the west, which he might have done, or in failing to warn him of such approach and the consequent danger; nor the negligence of the west end crew in switching the cars in on track 13 without using ordinary care to ascertain his dangerous position.

Appellant's first assignment of error is addressed to the action of the court in overruling its objection to testimony of the witness Crooker. He was asked: "While they are doing that work what means, if any, are taken to protect them?" He replied: "I don't know about anybody else, but I know myself that whenever I had charge of an engine and there was a car to be chained up, I protected the men." He was then asked: "How would you do that?" and replied: "By sending a man to the end of the track." He was then asked: "Had that been your practice during the time you had been there?" To which he answered: "Yes, sir. My practice, it had." Whereupon the defendant's attorney made the following objection: "I don't think that this man's practice, if he had it, would influence other people; they might not have known it; it is a question of the usual and customary practice in such yards, similar yards in handling these cars. I don't think what he states he did could be used in evidence of what was customarily done."

The objection was overruled. The witness had just answered that when he had charge of an engine, and a car was to be chained up, he protected the men while they were doing the work. This was a statement of that which he always did on such occasions, and was in effect a statement of his practice in that regard. The objection was not urged to that question and answer, but to that which followed, viz., that that which he always did was his practice. We think the first statement comprehended the second, and in the absence of objection to the first the admission of the second, if erroneous, was harmless. Again, the objection was not made until the testimony was in, and no motion to exclude was urged. (Houston, E. & W. Texas Ry. v. Roach, 52 Texas Civ. App., 95.) The assignment is overruled.

The second and third assignments complain of the admission in evidence, over appellant's objection, of certain testimony of the witness Crooker. The propositions following the assignments are that the hypothetical case presented to an expert for his opinion must be consistent with and based upon some substantial evidence proven on the trial; otherwise it involves mere speculation and is argumentative

and calculated to confuse and mislead the jury. It is sufficient, we think, to say that no such objection was urged in the court below, and can not for the first time be raised here. We think, however, that the testimony was pertinent to the pleadings and the facts adduced, and was properly admitted.

The fourth assignment is as follows: "The court erred in permitting the witness, N. W. Crooker, to answer the following question propounded by plaintiff's counsel:

"Q. 'If you say to a man, you go into this place, you being the foreman, and I will go down the line, and that is the place where the danger is to come from, what would the men have the right to expect of you while they were in that place?'"

"To which the defendant objected, and which objection was overruled, and the witness said:

"A. 'If I had told a man, knowing that I had a car to chain up——

"Q. 'You put them in a place of danger? A. I put them in place of danger.'

"Q. 'And you said you would go down the line, and he had time to get down to the point of danger, what would those men have the right to expect of you while they were in the place of danger?'"

"To all of which questions and the answers thereto the defendant objected, upon the ground that it was a hypothetical question, not supported by any evidence in this case, which objection was overruled, and the witness answered:

"A. 'They would have the right to expect, if I told them to go in there and I was going down the line, they would have the right to expect that I would protect them.'

"Which answer the defendant again requested the court to exclude because it was based upon a state of facts not shown by any evidence in the case; but the court refused to exclude said evidence, and admitted it to the jury, all of which was error."

We think the assignment presents no reversible error. The evidence was undisputed that after this disabled car had been removed the switch engine was to come back on track 13 and to couple onto a car at the east end of a string, and Eschenfelder, the foreman, when the engine started off with the bad order car, started in the direction of the western end of the track, saying he would go down the line and look after the other cars on that track, and he further testified that he saw the lamps of Walker and Swanson sitting on the ground and he supposed they were engaged in replacing the knuckle in the engine drawhead and that he supposed that they were in half a car length from the car. Under these circumstances the question as to what Walker and Swanson had the right to expect in the way of protection from the foreman was proper. The witness expressly stated that they had the right to expect that the foreman would protect them. There was no objection to the competency of the testimony. The assignment is overruled.

What we have said in disposing of the fourth assignment answers and disposes also of the fifth, which is based upon admission, over objection, of certain testimony of the witness Scanlan similar to that of the witness Crooker set out in the fourth assignment.

The witness Johnson, defendant's superintendent, was asked the following question: "Would it or not, when an engine with a knuckle out of the drawhead, the front end heading upon 13, and the switchman who was directing its movements having the power to stop it, would it not have been safer, in view of his knowledge that the cars on the track were liable to be moved without notice, to have stopped the engine in three or four car lengths back from the car to which it was to be coupled?" To which the witness would have replied, had he been permitted, that it would have been safer. The objection of the plaintiff, that the testimony sought to be elicited invaded the province of the jury, was sustained, and upon this the sixth assignment is based.

This witness had already testified that "If a party should undertake to adjust a knuckle within four or five feet of the end of a car standing on a track in a yard where cars were liable to be moved at any time, he would be more liable to injury than if the engine had stopped two, three, four or five car lengths away from it. He would have been a great deal less liable to injury." This was equivalent to the testimony sought by the question to be elicited, and it was not prejudicial error to refuse to permit him to repeat his testimony in answer to .a question calling for the same evidence in a different way.

The seventh assignment is predicated upon the refusal of the court to instruct a verdict for defendant, as requested by its first special charge. Our conclusions of fact dispose of this assignment adversely to the appellant, and the assignment and all propositions thereunder are overruled.

The eighth assignment assails the following paragraph of the court's general charge:

"While railroad companies are not insurers of the safety of their employes, they rest under a duty for the protection of their employes to adopt reasonable rules, regulations or methods for conducting their business, such as will, if properly pursued and carried into effect, afford a reasonable degree of safety to their employes while engaged in the discharge of their duties against extraordinary or unnecessary dangers, and failing to perform such duty would be negligence. Therefore, if you shall believe from the evidence that plaintiff was injured while in defendant's employment, and believe defendant had failed to exercise reasonable care and foresight in establishing rules, regulations or methods for the protection of its employe engaged as deceased was, and had omitted to provide such reasonable means of protection, as is above defined, and that by reason of such omission Samuel H. Walker was injured so that he thereafter died, and would not have been injured but for such failure of duty on defendant's part, then you will find for plaintiffs, unless you find that deceased was himself guilty of negligence in going between the cars or assumed the risk of injury by going between them under circumstances as will be hereinafter explained to you, in which case you will. find a verdict for defendant."

The portion of the charge complained of is a substantial copy of the charge in International & G. N. Ry. v Hall, 78 Texas, 659, which was expressly approved by the Supreme Court, and was fully war-

ranted by the facts upon which our conclusions are based; however, the court· in applying the law to the facts of the case required the jury to "believe defendant had failed to exercise reasonable care and foresight in establishing rules, regulations or methods," etc., and this was a sufficiently accurate statement of the law. International & G. N. Ry. v. Trunk, 100 Texas, 210. The charge did not assume that Walker was exposed to any extraordinary or unnecessary dangers, as implied by appellant's fifth proposition under this assignment. We can not agree with appellant that the use of the term "reasonable care" instead of "ordinary care," as used in the charge in explaining the quantum of care to be exercised by. the appellant to make rules and regulations for the protection of its employes, was calculated to confuse and mislead the jury. The phrases are often used as convertible terms and are generally so understood. If appellant desired an instruction more accurately defining ordinary care in that connection it should have requested it. The assignment and its propositions are overruled.

The ninth assignment is predicated upon the refusal of the court to charge the jury as requested in its sixth special charge, in effect, that there was no liability on the part of defendant because of the matter alleged in section 3, subdivision (e) of plaintiffs' petition; and the eleventh, upon the refusal of the court to charge the jury as requested in its second special charge to the effect that there was no evidence to show defendant's liability because of the matters alleged in subdivision (a) of said section. The subdivisions of the petition are set out in the first part of this opinion and need not be repeated here. Our conclusions of fact dispose of these assignments adversely to appellant, and they are overruled.

There was no error in the court's charge in the respects complained of by appellant in its tenth assignment of error. The fact that the crew at the western end might have been acting according to the usual custom and practice in switching the cars in on track 13 without first ascertaining that someone might be injured thereby can not relieve that crew of negligence if a person of ordinary prudence similarly situated would have made an investigation, before throwing the cars in on that track, to ascertain that fact, for otherwise the custom and usage would be the standard of care in such cases instead of that which a person of ordinary prudence would exercise under the same circumstances.

There is no merit in the twelfth assignment and it and the propositions thereunder are overruled.

The thirteenth assignment complains of the following paragraph of the court's charge on the measure of damages:

"If you return a verdict for plaintiffs you will assess their damages at such a sum of money as, if paid in hand at this time, will fairly. and justly compensate them for the loss of the pecuniary benefits they would in reasonable probability have received from deceased during his lifetime, and this, in the case of the minor children, includes the reasonable pecuniary value of the nurture, care and education they would have received from their deceased parent during their minority,

had he lived, if any. But you will not allow anything to plaintiffs, or either of them, for grief or sorrow suffered on account of the death of deceased, or for loss of his society, affection or companionship, or for any mental or physical pain suffered by him, if any; and the damages you may assess, if any, you will apportion among the plaintiffs in such shares as you may find by your verdict."

There is no merit in the contention that the charge is on the weight of the evidence in that it assumes that plaintiffs, as a fact, would in reasonable probability have received pecuniary benefits from the deceased during his lifetime. But if this is not so, still, we think, the charge was not wrong, because the law makes the wife a beneficiary in the earnings of her husband and makes it his duty to support and educate his children. The undisputed evidence showed the habits of industry and economy of deceased up to the time of his death, and that all his earnings, except a small portion necessary to pay his personal expenses, were devoted to the care and maintenance of his wife and children, and this was sufficient to warrant the jury to take into account the pecuniary benefits the wife and children would in reasonable probability have received had he lived; and the facts in this regard being undisputed, the court had the right to charge the jury that they were entitled to compensation for such loss without submitting to them the question as to whether such loss had been sustained by them through the death of Walker. Nor was it error for the court to instruct the jury not to allow to plaintiffs anything for grief or sorrow suffered on account of the death of deceased, or for loss of his society, affection or companionship, or for any mental and physical pain suffered by him. The charge was a correct one (Houston & T. C. Ry. v. Rutland, 45 Texas Civ. App., 621; International & G. N. Ry. v. McVey, 99 Texas, 32), and it can not be assumed that a correct instruction, by referring to grief and sorrow of the living, the loss of the society and companionship of the dead, and mental and physical pain suffered by deceased, in eliminating such as elements of damage, so excited the sympathy of jurymen qualified to pass upon the issues involved as to cause them to give a larger verdict than they would have done had they not been so restricted by the charge.

Appellant's fourteenth, fifteenth, sixteenth and seventeenth assignments, complaining of the refusal of the court to give its seventh, ninth, tenth and twelfth special charges, are overruled. These charges in so far as they were correct were covered by the main charge. The statement in the seventh special charge that deceased in entering the service of the railroad company assumed to understand the established customs and usages of defendant of switching locomotives and cars in that particular yard, is not as we understand the law to be. The ninth undertook to submit, on the question of assumed risk, a phase not pleaded by appellant as a defense.

The nineteenth assignment, complaining that the verdict is excessive, can not be sustained. Deceased at the time of his death was 33 years of age, in good health, and earning about $90 per month. He had formerly, as a conductor, earned $140 per month. His wife and children were aged respectively 27 years, 4 years and 1 year. He

was temperate and economical in his habits. and devoted all of his earnings to the support and maintenance of his wife and children except about five dollars per month, which he used for his personal expenses. While the verdict is large, we can not say that it is so excessive as to manifest that the jury was actuated by prejudice, passion or other improper motive in making the award. (Gulf, C. & S. F. Ry. v. Gordon, 70 Texas, 81; Missouri, K. & T. Ry. Co. v. Bodie, 32 Texas Civ. App., 168; Texas & N. O. Ry. v. Syfan, 43 S. W., 551; San Antonio & A. P. Ry. Co. v. Connell, 27 Texas Civ. App., 533.)

We conclude that there is no reversible error presented in the record and that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.