## FORT WORTH & D. C. RY. CO. v. STOVALL.  (No. 7343.)

(Court of Civil Appeals of Texas. San Antonio. April 15, 1925. Rehearing Denied May 13, 1925.)

1. **Evidence ⬅77(5)—Presumption from railroad's failure to produce witnesses is that their testimony would have been unfavorable.**

In action for death of brakeman, thrown from freight car by sudden jerk of train, alleged to have been caused by engineer's application of engine brakes alone, instead of train air brakes, presumption from defendant's failure to place engineer and fireman on stand is that they would have sworn that air brakes were not applied; such fact being peculiarly within defendant's knowledge.

2. **Master and servant ⬅276(8)—Engineer's failure to apply train air brakes for stop held proximate cause of death of brakeman.**

Evidence *held* to show that proximate cause of death of brakeman, thrown from freight car by sudden jerk, was engineer's negligence in applying engine brakes alone, instead of train air brakes, when stop signal was given.

3. **Master and servant ⬅213(3)—Brakeman held not to assume risk of injury by sudden jerk.**

Brakeman, on top of freight car in discharge of his duties, assumed no risk of being thrown to ground and run over by several cars because of separation of train into two parts by sudden jerk, caused by engineer's application of engine brakes only, instead of train air brakes, when stop signal was given.

4. **Death ⬅103(4)—Submission of question of loss of moral training and education held justified.**

In action for damages to minor children by death of father, evidence *held* to justify submission to jury of question as to counsel, moral training, advice, and education deceased would have bestowed on them.

---

**5. Appeal and error ⟨key⟩882(9)—Appellant cannot complain of testimony substantially same as brought out by it.**

Appellant cannot complain of testimony substantially same as brought out by it on cross-examination of another witness.

**6. Evidence ⟨key⟩539½(1)—Witness held qualified to testify that noise in stopping train was louder than usual slack.**

Witness, stating that he was familiar with movement and noise of slack running out of train of cars, *held* qualified to testify, in action for death of brakeman, thrown from car by sudden jerk, alleged to have been caused by engineer's application of engine brakes only, instead of train air brakes, that noise was louder than usual slack.

**7. Death ⟨key⟩99(4)—$25,000 for death of brakeman held not excessive.**

$25,000 to widow and 14 and 11 year old children of 40 year old brakeman, who had life expectancy of 28 years, earned $200 a month, stayed at home when not on road, took great interest in nurture, education, and religious training of children, gave most of his earnings to his family, and consciously suffered extreme pain before death, *held* not excessive.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by Mrs. D. J. Stovall, for herself and as administratrix of the estate of D. J. Stovall, deceased, against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Ellis Douthit, Thompson, Barwise & Wharton, and F. B. Walker, all of Fort Worth, for appellant.

Jones, Sexton, Jones, Buck & Gibson, of Fort Worth, for appellee.

FLY, C. J. Appellee, for herself and as administratrix of the estate of her deceased husband, D. J. Stovall, brought suit to recover damages from appellant accruing to her and her two minor children, Margaret and D. J. Stovall, Jr., by reason of the death of said husband and father, through the negligence of appellant. The cause was submitted to a jury upon special issues, and upon the answers thereto judgment was rendered against appellant for $25,000, which was not apportioned among the widow and children.

On December 15, 1922, deceased, who was the husband of the appellee and father of the minors, was in the employ of appellant as a brakeman on freight trains, and on that date about 10 o'clock p. m. he came to his death by being thrown from a freight car on which he was riding, by a jerk or jar in the train, which consisted of 51 cars, 32 of which were loaded. The train was being backed onto the storage or tail track. Deceased was an employé of appellant, and was in the performance of his duty when thrown from the car and killed. The engineer was given the stop signal when deceased was thrown from the train by the jerk, but, instead of using the air brakes on the train, he put on the air on the engine brakes, which caused a break in the line of cars, and those torn loose by the engine being stopped so suddenly ran over and crushed the life out of D. J. Stovall.

The jury was justified by the facts in finding that the engineer did not use the train brake system to control the speed and movement of the train as it was backed in on the tail track, which was negligence on his part; that such negligence was the proximate cause of Stovall being thrown from the car and killed; that he had not assumed any such risk; that the engineer used the brakes on the engine alone to stop the train, which was a proximate cause of Stovall being thrown from the car and being killed; and that his death damaged appellant in the sum of $25,000.

The first and second propositions question the sufficiency of the evidence to sustain the finding that the engineer failed, when the stop signal was given, to apply the train air brakes but applied the engine brakes alone. The circumstances point inevitably to that conclusion. The evidence showed that when the air brakes are applied to a train it reaches and stops the car farthest from the engine as quick as it does the one nearest thereto. In this instance the train was moving at the rate of from 7 to 10 miles an hour, when the emergency or "washout" signal was given by the conductor, who had seen the light carried by deceased disappear. There was a terrible crash of the cars, and a drawbar or coupler was torn from one of the cars, and the train was torn asunder; the south portion of the train attached to the engine coming to an instant stop, while the other portion rolled on across Belknap street in Fort Worth, until the brakes automatically set themselves from the breakage of the hose, as they are constructed and expected to do. Had the train air brakes been applied, the breakage would not have occurred, and the cars would have instantaneously stopped, as the air would have been evenly applied from one end to the other of the train. When the train broke, that automatically set the brakes on both sections of the train. The conductor swore that he did not hear the train air applied, although he was near the track where the train was moving, and he thought he would have heard it had it been applied. Four cars passed over the body of deceased; he being on the rearmost car that was being backed in on the tail track. The fact that the train was torn in two would indicate that the train air brakes were not applied by the engineer, as that would have instantly stopped a slow-moving train smoothly and without jar. It can be readily understood that, if the air was applied to the locomotive alone, that would stop it instantly and give a tre-

mendous jerk to the moving cars. The indications are that this was done, and the train severed in twain, and deceased thereby run over and crushed. Deceased was on top of the rear car, and simultaneously with the break in the train he disappeared, and immediately afterward was found under the fourth car back toward the engine. The dissevered cars had moved that far before they were halted by the automatic air. Three persons were standing near where the breakage in the train occurred, one the conductor, and none saw or hear any brakes applied on the cars. No one heard any "slack" running out of the train.

[1] The appellant could have placed the engineer and fireman on the stand and have proved the train brakes were applied if it had been done. Neither was made a witness, and that fact is significant in tending to show that the train air brakes were not applied. The presumption would prevail that the engineer and fireman would have sworn that the air brakes were not applied to the train. They knew and were not called by the party whose interest it was to have shown the brakes were applied. The witnesses were the employés of appellant. As said in Railway v. Day, 104 Tex. 237, 136 S. W. 435, 34 L. R. A. (N. S.) 111:

"Since this was a fact peculiarly within the knowledge of the railway company, its failure to produce such evidence, when, if inquiry had been made, the proof was, not only readily accessible, but of value to it, might well justify the jury in concluding no such inquiry had been made."

We add that it is further presumable that, if the inquiry was made as to the testimony of the engineer, it was ascertained that he would swear that he only applied the air to his engine and not to the train. The engineer and fireman were present at and during the trial and could have been used by their employer had it so desired. They were not used, and, as said in Farmers' Bank v. Burrus Mill Co. (Tex. Civ. App.) 207 S. W. 400:

"The failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party."

The evidence was amply sufficient to sustain the findings of the jury. Any reasonable man would know that the instant stopping of a locomotive of immense weight by applying air brakes would jar and break asunder the moving cars attached to it and to which no air was applied. The engineer was responsible for the situation which resulted in the death of Stovall. The first and second propositions are overruled.

[2, 3] The third, fourth, fifth, and sixth propositions are overruled. There was no testimony upon which to base the special charges requested by appellant. The evidence led to the inevitable conclusion that the proximate cause of the death of Stovall was the negligent manner in which the brakes were applied. It is clear that, if there had been no proof that the air brakes were not applied to the train, there was negligence in applying the brakes or the train would not have had a coupler jerked out and the train torn asunder. There was unnecessary violence in applying the brakes, because reason and experience have shown that when air brakes, with which the law requires every train to be provided, are properly applied, there is no breakage, and the train moving at from 4 to 10 miles an hour should have instantly stopped without damage to the cars or any one riding thereon. Deceased was on the top of the car in discharge of his duties as a brakeman and assumed no risk arising from jerking the train in two and throwing him to the ground and running three or four cars over him.

[4] There was sufficient evidence as to counsel, moral training, advice, and education that would have been bestowed upon his children by Stovall to justify their submission for the consideration of the jury. The evidence was positive and uncontradicted that the deceased father did talk with and advise his children as to their moral duties, and took great interest in their education. He sent them to church and Sunday School, and went with them when at home. The charge was not on the weight of the evidence, nor did it authorize double damages. The attacks on the charge are hypercritical and untenable, and the seventh, eighth, ninth, tenth, and eleventh propositions are overruled. Railway v. Walker, 58 Tex. Civ. App. 615, 125 S. W. 99.

[5, 6] The testimony complained of in the twelfth proposition was substantially the same as that brought out by appellant when Mrs. Bickel was being cross-examined, and it is in no position to complain of the testimony of Orvin Bickel, even if the testimony was inadmissible, which we are not disposed to hold. The witness qualified himself to testify, and could testify as to the noise being "a louder noise than the usual slack running out of a moving train." He had stated that he was "familiar with the movement and the noise made by the slack running out of a train of cars." The twelfth proposition is overruled.

[7] The thirteenth and fourteenth propositions are overruled. The dead husband and father was a healthy, robust man, earning $200 a month, and 40 years old, with a life expectancy of 28 years. When not on the road in discharge of his duties, he stayed at home, took great interest in the nurture and education of his children, a boy 14 years of age and a girl 11 years old, and admonished them as to good living, and attended church and Sunday School with them. He spent little of his earnings on himself, but gave them to

his family. He lived for a short while after the accident, and consciously suffered extreme pain and agony. There is no excess in the verdict for $25,000 in favor of the wife and two children. There was no evidence of any malice or prejudice upon the part of the jury. Whether or not a verdict is excessive is a matter of fact to be determined in the light of the facts in each case, and authorities have little bearing upon the question. The authorities cited by appellant have no bearing whatever upon the facts of this case.

The judgment is affirmed.