## TEXAS CO. v. BROWN et al.

### No. 8075.

Court of Civil Appeals of Texas. Austin.
May 1, 1935.

Rehearing Denied May 22, 1935.

H. S. Garrett and H. R. Wilson, both of Fort Worth, for appellant.

W. Marcus Weatherred, of Coleman, for appellees.

BAUGH, Justice.

Suit was by Lenton Brown individually, and as next friend for his two minor children, against the Texas Company for negligently causing the death in Coleman county of Mrs. Bobbie Ione Brown, wife of Lenton Brown, and mother of said children, on May 23, 1933. Trial was to a jury upon special issues, and upon their answers thereto judgment was rendered for plaintiffs in the sum of $13,250, from which judgment the Texas Company has appealed.

Brown was an employee of the Arcadia Refining Company which owned a lease and operated several producing oil and gas wells thereon in the Burkett field in Coleman county. He resided with his family on said lease near the north line of a lease owned by the Texas Company. The latter company had a producing oil and gas well about 160 feet south of Brown's residence. About May 1, 1933, Brown caused to be dug a storm cellar about 45 feet west of his house, same being about 10 feet long, 6½ feet wide, and 6 feet deep, running east and west. This cellar was covered with heavy timbers laid horizontally, on top of which was placed sheet iron and that was covered with soil. In the center of the roof was placed a vent 6 inches square. The entrance was at the east end of the cellar through a sheet-iron covered trap door, swung on lateral hinges to the south side, which opened by lifting it. When closed it fitted tightly on the frame. The cellar door was 163 feet from appellant's well, a little west of north therefrom, and on slightly higher ground than the mouth of the well. The well in question was what is termed a "pumper." It was cased with 6⅝-inch casing, inside of which a 2-inch pipe extended down to the oil-producing sand, through which the oil was pumped to the surface. Between the two casings considerable natural gas flowed and was allowed to escape into the air through two 2½-inch openings at the mouth of the well and about 18 inches above the surface of the ground. This gas was what is termed "wet" or "heavy" gas. On the day in question, the record discloses, it had been raining intermittently, and a slight breeze had been blowing from the southeast; that is, on an approximate line between the Texas Company's well and the cellar. The cellar door had been closed most of the day, but was open for a period of time late in the afternoon. About 10 o'clock that night a threatening storm cloud was approaching from the northwest and the Brown family concluded to use the cellar. Mrs. Brown went to the cellar to prepare for such oc-

cupancy. As she entered the door, gas became ignited through some means not positively proven; an explosion or flare from the cellar door occurred, which ignited her clothing and caused her death the following day.

The plaintiffs' cause of action is predicated, in brief, upon the allegations that the gas from appellant's well entered the cellar; and that appellant was negligent, under the facts above stated, in the operation of said well, in not erecting rising pipes, or pipes extending into the air, to take care of said escaping gas, whose dangerous and inflammable nature was well known to appellant; and in not causing said gas to be burned at the well; but instead permitted it to escape into the air in the immediate proximity of plaintiff's premises, knowing that serious injuries might probably result.

In addition to special and general exceptions and denials, pleas of contributory negligence and assumed risk, the appellant defended on the ground that if gas did accumulate in said cellar on the occasion in question in sufficient quantities to cause the injuries suffered, it came from a leaky pipe line laid in the immediate vicinity of the cellar before the cellar was dug; and that Brown knew of the existence, location, and defective condition of such gas line when he voluntarily dug the cellar within a few feet of same. In this regard the record discloses that a 2-inch gas line of the Arcadia Refining Company ran about 70 feet east of the house occupied by Brown. Through this main was carried oil and gas from the Arcadia's wells to its separator where the oil and gasoline contents were extracted, the gas then used by the Arcadia for power in operating its pumps and to supply Brown's residence, and the excess then burned in a rising pipe flare. From this main, which carried a pressure varying from 5 to 125 pounds, a two-inch pipe extended to and supplied gas to Brown's residence and to a wash boiler out in his yard to the south. About March 1, 1933, one S. C. Adams, a farmer, moved into a residence about 400 yards northwest of Brown's residence, and himself connected up a line with the tap line running into Brown's residence and extended same up to Adams' residence. This extension continued the Brown line directly westward some 30 feet, then made an elbow turn to the northwest, continuing to the Adams residence, was constructed of secondhand 1-inch and 1½-inch pipe connected with differing kinds of couplings, and laid on top of the ground. The northeast corner of the cellar, dug after the Adams' line was laid, was only 24 inches from this extension gas line. This extension line was frequently run over by trucks and cars. About April 1, 1933, a car broke this pipe near the location of the cellar. Adams repaired the break himself and put in a union about 7½ feet north of the center of the north wall of the cellar, and then buried the line 4 to 6 inches deep for a distance of 30 to 50 feet where he had put in this union; the buried portion extending southeast from the union beyond the corner of the cellar. From a point some 30 or 40 feet northwest of this union, the pipe remained exposed on top of the ground, and was thereafter frequently crossed by vehicles. This line was tested out by agents of appellant on June 14, 1933, some three weeks after the accident, and the union just north of the cellar was leaking gas under a 10-pound pressure in the line at the estimated rate of 2,500 or 3,000 cubic feet per day. Gas was escaping through the ground directly above this union sufficient to ignite, and when the soil was removed a flame 6 or 8 inches high burned from the leaky union. It was then recovered, packed, and water poured over the ground. The leaking gas then began escaping in adjacent dry ground a few feet away, in sufficient quantities to ignite.

In brief, it was the theory of the appellant that the vibrations of the pipe, caused by vehicles passing over its exposed portions, formed an air space around the covered pipe, which permitted the leaking gas to follow along the covered portion of the pipe, and when the rains of May 23d sealed the surface of the ground, this leaking gas followed the pipe line to the southeast and escaped into the cellar through cracks and pores of the ground between the buried portion of the line and the northeast corner of the cellar, only 2 feet away. The evidence showed that the soil on the surface, and the gravel and rocks underneath it, through which the cellar was dug, were such that in dry weather the gas could have found an outlet into the cellar.

In the light of the foregoing and of other facts hereafter to be noted in discussing the issues presented, the respective theories of the parties were submitted to the jury, which found as follows:

1. That the injury to Mrs. Brown was caused from the accumulation of natural gas in the cellar.

2. That this gas came from appellant's well.

3. That appellant was guilty of negligence in operating its well at the time with an open casing head.

4. That such negligence proximately caused the injury.

5. That the gas causing the explosion did not enter the cellar from the gas line near the cellar.

6. That neither Lenton Brown nor his wife were guilty of contributory negligence.

The other issues related to the amount of damages and need not be noted here.

Appellant's first contention, presented under several propositions, is that the finding of the jury that the gas in the cellar on the occasion of the injury came from appellant's well, and the finding that it did not come from the pipe line, are without support in the evidence, and are contrary to the overwhelming preponderance of the evidence.

We shall not undertake to set out the evidence. It may be conceded that the explosion in question was caused by natural gas which accumulated in the cellar on the day in question. There was ample testimony to show that wet or heavy gas was emitted into the air constantly on that date in large quantities from the mouth of appellant's well, about 18 inches above the surface of the ground; that the surface of the ground between said well and the cellar was smooth and slightly elevated towards the northwest; that on damp, rainy days, such as was May 23, 1933, such gas has a tendency to hover near the ground and will settle or accumulate in low places, and will seek low places; that it will ignite when collected in sufficient quantities in such low places; that there had been a slight breeze at times during that day from the direction of appellant's well towards the cellar; that the tendency of wind is to diffuse and dissipate such gas into the air; but that if such breeze be slight such gas may be carried by it along the surface of the ground into low places; that such gas could have entered the cellar either through the door when open, or through the air vent in the roof of the cellar; that there was no obstacle between the well and the cellar to prevent undiffused gas reaching the cellar from appellant's well. While witnesses for appellant testified that in their opinion sufficient gas from the well did not and would not, under the circumstances enumerated, enter said cellar in sufficient quantities to explode, on cross-examination they in effect admitted that it could have done so. One witness for appellees, who qualified as an expert in such matters, after an inspection of the premises on May 24, 1933, testified that in his opinion the gas which exploded on the occasion in question did come from appellant's well. Under these circumstances we think the evidence, considered most favorably in support of the jury verdict, was clearly sufficient to sustain it.

Nor do we sustain appellant's contention that the finding that the gas in the cellar did not enter from the pipe line was contrary to the great weight of the evidence. Appellant's contention in that respect is based largely upon conditions discovered by its witnesses on June 14, 1933, and on September 23, 1933. These conditions are in the main stated above. As above stated, their theory was that the vibrations of the pipe caused an open space about it alongside the cellar, which the gas followed outside of the pipe to the northeast corner of the cellar; that it then left the pipe and entered the cellar through cracks in the soil, or through the gravel strata underneath the surface soil. The evidence showed that the surface soil was such that it would crack in hot dry weather; that cracks were found in the open walls of the cellar on September 23d; that the walls on that side of the cellar were charred about such cracks, but not charred elsewhere in the cellar; that particles of wood in the wall near the northeast corner and of the roof timbers on that side showed to have been scorched or burned, but had not been burned in the other portions of the cellar; that the cracks in the cellar wall extended towards the pipe line and were such that gas could have escaped through them; that it was the opinion of some of appellant's witnesses that the gas which exploded did enter the cellar from the leaky buried union joint just north of the cellar.

On the other hand, the evidence of the plaintiffs showed: That the cellar was completed about three weeks before the accident; that on the date of the accident the cellar had not dried out and that the walls were not then cracked; that two or three days after the accident Lenton Brown tested the pipe line about the cellar with a lighted torch, and found no gas escaping therefrom; that he then took the torch into the cellar and tested it out for gas leaks nearest the pipe line, and found

none there; that witness Johnson tested out the corners of the cellar with matches on the morning of May 24th for gas and found none in the cellar; that on June 14th, after the leaky union was discovered, the walls and corners of the cellar and all openings in the cellar nearest the gas line were tested with a blow torch and no gas found; that witnesses then re-covered the leaky union with soil, tamped it down, poured water over it, closed the door of the cellar for two hours, and then again tested the cellar, first by throwing into it a lighted torch, and then testing the corners and crevices with a blowtorch, and found no gas in the cellar. The evidence also showed that Brown had repeatedly used the cellar, where he had chicken feed stored, entering it daily; that he and his family had prior to the accident once spent the night therein; and that neither prior to nor subsequent to the date of the explosion, notwithstanding the leaky union joint in the gas line, had any one ever detected any gas therein. From these facts, we think the jury were justified in concluding that the leaky gas either escaped upward through the ground above the joint, or that it followed the pipe line away from the cellar towards the direction from which the vibrations of the pipe came, and escaped into the air where the pipe emerged from the ground; and that the charred conditions of the walls and timbers of the cellar found by appellant's witnesses on September 23d, four months after the accident, were caused by previous tests undisputedly made in the cellar to ascertain if the explosion was caused by gas escaping from the pipe line. Their finding against appellant's theory was, therefore, not without competent evidence to support it.

█ Appellant cites and quotes from numerous cases holding that where a finding is without competent evidence to support it, or is so contrary to the great preponderance of the evidence as to be clearly wrong, such verdict cannot stand, and it is the duty of the appellate court to set it aside. This rule is so well established in this state that it needs no citation of authorities to sustain it. But we think no such case is here presented. There can be no question in the instant case but that gas accumulated in the cellar; that it ignited as Mrs. Brown undertook to enter the cellar with some sort of light; that such ignition resulted in her death; and that said gas entered the cellar either from the open casing-head well of appellant, which was constantly emitting a large volume of gas into the open air near the surface of the ground, or from the leaky pipe buried near the northeast corner of the cellar. Coming from one or the other of these sources, under the facts and circumstances hereinabove stated, we think the jury had ample probative evidence before it to determine from which source the gas came; and having done so we are not at liberty to disturb their finding.

█ The next contention made by appellant is that no danger from gas escaping from its well existed until Brown dug his cellar; that the cellar was not on the premises of appellant; that there was no evidence to show that appellant knew of the existence of said cellar; and that consequently it could not foresee any such danger and no duty rested upon it to guard against a danger unknown to it. This contention is not sustained. The law is well settled that negligence must be predicated upon failure of the party charged to discharge some duty imposed upon him. Denison L. & P. Co. v. Patton, 105 Tex. 621, 154 S. W. 540, 45 L. R. A. (N. S.) 303; 30 Tex. Jur. 649. And liability for injuries inflicted is dependent upon whether the injuries suffered were of such character as the defendant could or should have foreseen them in the exercise of ordinary care under the circumstances of the particular case. City of Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 27 A. L. R. 927; Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. But it is not essential that the party charged should have anticipated the particular injury inflicted nor the particular manner in which it occurred. It is within the rule of liability if he should have reasonably foreseen that some similar injury would probably result. Texas Pub. Ser. Co. v. Armstrong (Tex. Civ. App.) 37 S.W.(2d) 294 (writ ref.); Ft. Worth Gas Co. v. Cooper (Tex. Civ. App.) 241 S. W. 282; Browning v. Beck (Tex. Civ. App.) 73 S. W.(2d) 626, 628, and cases there cited. Under these circumstances we do not think it was essential that appellant should have actually known of the existence of this particular cellar at the particular location. The danger from the gas escaping from appellant's well settling on a damp day in any low place in the vicinity thereof, and of becoming ignited and injuring some one, was the criterion of appellant's conduct in releasing it into the open air. But even if

actual knowledge of the existence and location of the cellar were the test, there was ample evidence to charge appellant with such knowledge. The photographs introduced by appellant, taken near the well and showing the cellar, and those taken near the cellar looking towards appellant's well, disclose no obstructions between them, and that the well and the cellar are in open, obvious, and unobstructed view of the other, discernible to any one on the premises. The testimony also showed that appellant's superintendent for that field was at the well almost daily and could readily have seen Brown's cellar nearby upon a mere casual observation of the surrounding premises.

Appellant next insists that because no uniform custom of using rising pipes and flares to consume escaping gas was proven, no negligence of appellant was shown and a peremptory instruction in its favor should have been given to the jury. Appellee offered to prove such custom in that field, but upon objection of appellant that negligence could not be predicated upon custom, the trial court excluded the evidence of custom. Evidence was admitted, however, that the excess gas from eleven wells on adjoining leases was disposed of through rising pipes and burning flares. This on the question of whether the gas which entered the cellar could have come from other wells in the vicinity of the cellar.

A proper conception of appellant's negligence, vel non, is not dependent upon whether a uniform custom of disposing of excess gas by burning it prevailed in that field; nor upon whether appellant complied with it, though evidence as to such custom was clearly admissible on that issue. Its admissibility, however, is not for the purpose of limiting the jury in their finding on the issue of negligence, but to enable the jury to arrive at a standard of ordinary care in the premises. Cameron Compress Co. v. Whittington (Tex. Com. App.) 280 S. W. 527, and cases there cited; Texas Pipe Line Co. v. Vaught (Tex. Civ. App.) 294 S. W. 865; 45 C. J. 1241; 30 Tex. Jur. 820. Where the acts charged as negligence are such that the jury may, in the light of other evidence and of common knowledge, determine their character, irrespective of any custom that may prevail, failure to show what was the usual custom with reference thereto will not destroy a jury finding of negligence. We think the instant case presents an instance where

the jury were qualified to determine, regardless of any uniform custom as to disposing of such gas, whether appellant's acts in discharging it into the open air as and where it did, in the light of its known characteristics and dangers, was a method which should have been used by a person of ordinary prudence under the circumstances.

It is also urged that because of improper testimony of Lenton Brown, not responsive to the question asked him, that on the evening of May 26th (three days after the accident) the Texas Company equipped their well with a burning flare, the court should have declared a mistrial. The rule is well settled that subsequent repairs are not admissible as evidence to show negligence under pre-existing conditions. St. Louis, A. & T. Ry. Co. v. Johnston, 78 Tex. 536, 15 S. W. 104; City of Beaumont v. Dougherty (Tex. Civ. App.) 298 S. W. 631, 636; Gulf Pipe Line Co. v. Bailey (Tex. Civ. App.) 40 S.W. (2d) 938, 941; 45 C. J. 1235; 30 Tex. Jur. 822. In the instant case the trial court instructed the jury not to consider the testimony complained of as any admission of negligence by appellant, or as any evidence of negligence. It may be seriously doubted whether any instruction of the court could remove the injurious effects of such testimony from the minds of the jury. And had nothing further in this respect been offered in evidence, we would be disposed to reverse the case because of such inherently damaging testimony. The record discloses, however, that in presenting its defense, and for the purpose of showing that the gas in the cellar came from the leaky gas line and not from appellant's well, the appellant without reservation introduced a number of photographs of the premises, taken on June 15th, following the accident, one of which was taken at a point near the cellar door, looking southeast towards appellant's well, with descriptive memoranda attached to such photograph, also offered in evidence by appellant itself as a part of its defense. Item No. 4 of this memoranda read: "Burning flare now connected to the casinghead of the Texas Company W. L. Edmondson #1 Well. This flare installed subsequent to May 23rd, 1933, date of gas explosion in Brown's cellar."

The photograph also clearly showed the burning flare near the well. These photographs were taken by appellant on June 15, 1933, the memoranda placed thereon

by its own witness, and the whole introduced voluntarily by appellant itself as a part of its defense. It is obvious, therefore, that if Brown's testimony had not been given, the same information would have been before the jury from the evidence of appellant; the only difference being that Brown fixed the time of the installation of the flare nearer to the date of the explosion. Under such circumstances, therefore, we do not consider the improper testimony reversible error, in view of the fact that appellant itself introduced evidence prepared by it before the trial, disclosing the same material facts of which it now complains. Had it offered such evidence merely in rebuttal, or subject to its objection to Brown's improper testimony, a different case would be presented. But where, as here, the same information was contained in evidence prepared by appellant in advance of the trial and offered by it as a part of its main case, we think it is in no position to complain. In fact, had the photographs been offered without the memoranda thereon, testimony that the flares shown thereon were installed subsequent to the accident would have been admissible. St. Louis, A. & T. Ry. Co. v. Johnston, supra; 45 C. J. 1235.

Appellant complains at some length of the exclusion by the trial court of opinion evidence of witness Clark to the effect that gas escaping from appellant's well would not reach the cellar in sufficient quantities to form a combustible mixture; but that same would be dissipated into the air. The witness qualified as an expert in matters pertaining to natural gas. The testimony was clearly admissible. After sustaining objections thereto, however, the trial court subsequently admitted substantially, if not identically, the same testimony that he had theretofore excluded. Whatever may have been the error in excluding it in the first instance was thus rendered harmless and immaterial when the testimony of the same witness to the same effect was subsequently admitted.

Nor was it error to permit the witness Johnson to testify, after observing the gas flowing from appellant's well on the morning of May 24th, that in his opinion it was flowing in sufficient quantities to reach and enter the cellar of Brown. His long experience in dealing with gas wells and gas fields and his familiarity with its characteristics in damp weather suffi-

ciently qualified him to give his opinion. There appears to be no difference, so far as admissibility is concerned, between his testimony and that of appellant's witness Clark, except that Johnson saw the well the next day after the explosion when Clark did not; and further that their opinions as to source of the gas in the cellar were exactly opposite. That, however, relates to the weight, and not to the admissibility, of their testimony.

The next contention made is that it was error to allow, as a proper element of damages, recovery for the pain and suffering endured by Mrs. Brown from the time she was injured until the time of her death. One thousand dollars was allowed to each of the plaintiffs. There is no contention made that the amount found by the jury is excessive, nor that the issue was not properly raised by the pleadings and the evidence. The contention is that it is not a recoverable element of damage under article 4671, R. S. 1925, citing particularly March v. Walker, 48 Tex. 372; Galveston, H. & S. A. Ry. Co. v. Matula, 79 Tex. 577, 15 S. W. 573, and Texas & N. O. Ry. Co. v. Walker, 58 Tex. Civ. App. 615, 125 S. W. 99.

These cases announce the rule prior to 1925. This identical question has been before the courts in consideration of article 5525, R. S. 1925, as amended by Gen. Laws 39th Leg., 1925, p. 299, c. 115, § 2, and amended by Gen. Laws, 40th Leg., 1927, p. 356, c. 239, § 1 (Vernon's Ann. Civ. St. art. 5525). Prior to such amendments to article 5525 no such recovery was authorized. Under the amended statute, however, there passes to the survivor not only his own cause of action arising from his loss in the death of the injured party, but also such cause of action as the injured party could have asserted had not death ensued. Had Mrs. Brown survived she would have been entitled in a proper suit to assert as an element of her damage the pain and suffering caused by appellant's negligence. This exact question was before the court in Marcus v. Huguley (Tex. Civ. App.) 37 S.W.(2d) 1100, 1105 (writ dis.); approved in Jenney v. Jackson (Tex. Civ. App.) 46 S.W.(2d) 418, 419, and therein decided adversely to appellant's contention here. See, also, 33 Tex. Jur. pp. 17, 141, and cases there cited.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.