## TEXAS POWER & LIGHT CO. v. CULWELL et al. (No. 10411.)

Court of Civil Appeals of Texas. Dallas.
May 30, 1929.

Rehearing Denied June 29, 1929.

J. L. Gammon, of Waxahachie, and Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellant.

Miller & Price and H. S. Beard, all of Waco, for appellees.

JONES, C. J. Iona Culwell, the surviving wife of Clyde Key Culwell, S. L. Culwell and his wife, Mrs. S. L. Culwell, the surviving parents of Clyde Key Culwell, instituted suit in the district court of Ellis county against the Texas Power & Light Company, appellant, to recover damages for the death of Clyde Key Culwell. At the time of the filing of this suit, the plaintiffs were the only persons entitled to institute such suit. After the filing of the first amended original petition, a daughter was born to appellee Iona Culwell, and a plea of intervention was filed by the mother, as next friend for this infant daughter, given the name Juanita Ruth. The trial resulted in a judgment in favor of the mother, Mrs. Iona Culwell, for $7,500, and in favor of the infant daughter, Juanita Ruth Culwell, for the sum of $5,000. No recovery was allowed in favor of decedent's father and mother, and they have not appealed from the judgment. Appellant has duly appealed from the judgment and has brought same to this court for review.

The facts necessary to an understanding of the issues involved are as follows: The death of Clyde Key Culwell occurred in the town of Midlothian, Ellis county, Tex., on July 27, 1927. At that time he was operating a tailor shop in said town, and also doing cleaning and pressing, and was earning about $125 per month. He was 21 years of age, and his wife at that time 18 years of age. Juanita Ruth Culwell was born October 4, 1927, and

was a child of the marriage of the deceased and Iona Culwell. The other plaintiffs were the father and mother of deceased. Appellant was engaged in the business of manufacturing, producing, and generating electricity for commercial purposes, and supplied the inhabitants of the town of Midlothian with electric power for the various purposes for which such power may be used. Dee's Hardware Store in said town was furnished with power for electric lighting and for the operation of an electric motor. Such power was carried to the hardware store by means of a 225-voltage wire constructed and owned by appellant. This electric wire entered the Dee building in the rear and was constructed about 20 feet above the ground. Deceased's tailoring business was carried on in a building adjoining this hardware store; this building was used by him jointly with M. P. Moore, who operated a plumbing business in the same building. This building did not cover the entire lot, there being a considerable space in the rear that was vacant, but which space was used and controlled by deceased and Moore in the conduct of their business. The evidence does not disclose how long this electric power wire that entered the Dee building had been constructed, other than that it was there some seven or eight years previous to deceased's death. A Mrs. Henderson occupied a building adjoining the building used by Culwell, and some five or six years previous to the fatal occurrence in question, Mrs. Henderson had constructed a wire that entered the rear and upper part of her building, as an aerial to a radio set owned and operated by her. This wire was of standard make and in common use for such purposes. Near where the power wire entered the Dee building, this radio wire crossed the power wire about 2 feet above it. This radio wire was a copper uninsulated wire. July 27, 1927, was a day of intermittent showers of rain in the town of Midlothian, accompanied by some display of electricity. About 30 minutes previous to the fatal injury to deceased, a shower of rain was falling during which there occurred what is described as a "heavy clap of thunder." Just previous to the accident, the deceased was seen by Moore to pass out the rear door of their building with a bundle in his hand, which he thought was clothing. In the rear of this building, the deceased had constructed a wire to use as a clothesline, on which he would hang clothes that had been cleaned. Not exceeding 2 minutes after deceased's exit from the rear door, Moore heard some one groaning, instantly rushed out of the rear door, and saw deceased lying upon his back about 9 or 10 feet from this rear door. Moore, who was an experienced electrician, at once discovered that deceased had come in contact with a live electric wire, which was grasped in his right hand, loosely held in his left, and extended over his chest. As soon as possible, with due care for his own safety, Moore disconnected the wire from deceased and immediately carried him into his place of business, when medical attention was at once given him and restoratives, which proved unavailing, were applied. The wire that deceased came in contact with and that caused his death was a portion of the Henderson aerial wire, which had become severed near where it connected with the Henderson building and had fallen across the 225-volt electric wire that entered the hardware building, and extended to the ground, where Culwell was found. This detached radio wire became charged with a deadly current of electricity through its contact with appellant's wire that entered the Dee's Hardware Store. Deceased's contact with this broken radio wire thus charged was the cause of his death.

The undisputed evidence established the fact that the insulation on appellant's wire had become worn or broken to such an extent that the wire in many places was without any insulation whatever, and was in such condition that an uninsulated wire that should come in contact with appellant's wire, especially if the contact was made at a place bare of insulation, would become charged with electricity. The undisputed evidence further established the fact that a properly insulated wire, which carried the voltage that was carried by the wire in question, would be safe from escape of electricity to an uninsulated wire or other object coming in contact therewith. In other words, it was established by undisputed proof that, if appellant's wire entering the hardware store had been properly insulated, there would have been no charge of electricity communicated to the broken radio wire, and contact with such wire by Culwell would have been made with perfect safety to himself. The evidence does not disclose the cause of the breakage of the radio wire on the occasion in question, other than what might be concluded by inference from the attendant circumstances. The ground in the rear of deceased's place of business had become damp and muddy at the time deceased met his death. This condition of the ground was partially due to the rain that had fallen, and partially due to the fact that deceased and some other parties emptied waste water on this ground, though at the specific place in the rear of this building, where deceased's body was lying when discovered, he did not empty his waste water.

■ Appellee's petition, together with the trial amendment filed under leave of the court, alleged very fully various acts of negligence on the part of appellant, including allegations to the effect that appellant was guilty of negligence, because it maintained and used the wire in question without proper insulation; and because of a failure to maintain the insulation in a proper and safe condition. This pleading forms a sufficient basis for the affirmative issues submitted by the

court to the jury, and is a sufficient basis for the judgment entered.

A number of appellant's special exceptions were sustained to portions of appellee's pleadings, and this ruling of the court required the filing of the trial amendment by appellee, curing the defects in said pleading.

Appellant's defensive pleading, after a general demurrer and various special exceptions, consisted of special defenses, in which is alleged all of the affirmative defenses that the circumstances of this case would admit, including a plea that the broken radio wire was caused by an unprecedented electric storm that just preceded the death of Culwell, and that during this storm the radio wire in question was struck by lightning and thereby broken and caused to fall across appellant's wire, of which appellant had no knowledge, and because of the very short space of time that elapsed from the breaking of the radio wire to the accident in question could not have discovered such condition prior to the injury and death of deceased. It is also alleged that this breaking of the radio wire by the electric storm was an act of God and was the sole proximate cause of the death of Culwell. It further alleged that deceased was himself guilty of negligence that proximately caused his death, by taking hold of the broken piece of radio wire hanging in the rear of his premises without the exercise of any care on his part; and, further, that he was guilty of contributory negligence that proximately caused his death, in that, it was deceased's custom to pour the waste water, which had accumulated in his place of business on the ground in the rear of his premises, causing said ground to become very damp and wet and a dangerous conductor of electricity. The case was submitted to the jury on special issues, and the findings of the jury on such special issues are stated as follows:

In the court's main charge:

(1) The defendant permitted the insulation of its power and light wire leading into Dee's Hardware Store to wear away, leaving the naked wire exposed;

(2) The act of permitting the insulation on appellant's said power and light wire to wear away and leave the naked wire exposed constituted negligence on the part of defendant;

(3) Such negligence was the proximate cause of the death of Clyde Key Culwell;

(4) Plaintiff Iona Culwell sustained damages by the death of her said husband in the sum of $7,500;

(5) Intervener, Juanita Ruth Culwell, sustained damages by the death of her father in the sum of $5,000;

(6) The father and mother, Mr. and Mrs. S. L. Culwell, sustained no damages by reason of the death of their son, Clyde Key Culwell.

At the request of appellant:

(1) The electric radio wire was not the sole proximate cause of the death of Clyde Key Culwell;

(2) The striking of the radio wire by lightning, causing said wire to break, was not the sole proximate cause of the injury received by deceased;

(3) The falling of the radio wire was not the sole proximate cause of the injury received by deceased;

(4) The erection of the radio wire was not a new and intervening cause of the accident;

(5) The striking of said radio wire by lightning was not a new and intervening cause of the accident;

(6) The falling of the radio wire was not a new and intervening cause of the accident;

(7) The death of Clyde Key Culwell was not the result of an accident;

(10) Clyde Key Culwell exercised ordinary care in throwing water on the ground in the rear of his place of business.

Before requesting any of the above special issues, appellant filed a motion for, and requested the giving of, peremptory instructions in its favor, and based all of the requested charges on the fact that the court had overruled this requested peremptory instruction. In addition to the requested issues given by the court, the appellant requested special issues Nos. 8 and 9:

(8) Did Clyde Key Culwell exercise ordinary care in taking hold of the radio wire?

(9) Did such failure to exercise ordinary care cause or contribute to cause his injury?

These requested special issues were refused by the court, to which ruling appellant duly reserved an exception, and has duly assigned error on such ruling.

■ In connection with the submission of special issue No. 2 in the main charge, the court properly defined the term "negligence" as meaning a "failure to do that which an ordinary prudent person would have done, or the doing of that which an ordinary prudent person would not have done under the same similar circumstances." In connection with special issue No. 3 of the main charge, the court defined the term "proximate cause" as being: "The efficient moving cause, without which the injury complained of would not have occurred. An act or omission becomes the proximate cause of an injury when such injury is the natural or probable result of the act, or omission, in question, and which injury, or some similar injury, ought to have been foreseen by a person of ordinary prudence in the exercise of reasonable care, in the light of all the attending circumstances."

In connection with the special issues submitting the measure of damages, the court correctly defined such measure of damages.

In our opinion, these findings of the jury are sustained by substantial evidence and are adopted as the findings of this court on such disputed issues of fact.

■ The court did not err in refusing

peremptorily to instruct the jury in favor of appellant. The electric light wire in question had been constructed several years before this unfortunate occurrence. At the time of its construction it was placed where it entered Dee's Hardware Store, about 20 feet above the surface of the earth, but where this wire passed over a shed room adjoining the rear of this building, it was only about 2 feet above the tin roof. It is a reasonable inference that at the time the wire was constructed it was properly insulated. When it was constructed there were no wires that had been strung over and above this electric wire at or near the immediate premises where this accident occurred, and it is also a logical inference of the evidence that, at the time of its construction, appellant performed its duty to all those who had the lawful right to be upon these premises. Appellant offered no evidence in its behalf other than that given by appellee's witnesses might be so regarded. The undisputed evidence is that a wire carrying electricity of no more than 225 voltage, the amount this wire carried, can be made safe from the escape of its electric current by means of proper insulation. We conclude that there was no negligence in the original construction of this wire, and that appellant originally performed the measure of its duty in respect to insulation to prevent the escape of electricity by contact with some other body. Appellant's duty, however, to those of the public, who had a lawful right to be on the premises in proximity to this wire, did not end with this original, proper and safe construction of its wire. In operating a wire, such as the one in question, which carries a dangerous charge of electricity, appellant owed the further duty to exercise proper care to see that its insulation is preserved and that its wire does not become in such condition, as to insulation, that would subsequently render it dangerous to those lawfully using the said premises. In this latter respect, the undisputed evidence shows that appellant became delinquent and permitted this wire to be transformed from a safe to a highly dangerous one. Such delinquency on its part could not be considered as comporting with the conduct of an ordinarily prudent person when dealing with such a dangerous agency as electrical power. Certainly the jury was warranted in finding that this delinquency constituted negligence.

 Negligence, however, only becomes actionable when it is committed in violation of a duty which its author owed to the party injured thereby. Did appellant owe a duty to deceased to maintain proper insulation of this wire under the circumstances of this case? The radio wire had been strung over and a few feet above this electric wire for five or six years. Because of this fact, appellant was charged with notice that an uninsulated wire had been so strung. It is a matter of common knowledge that any such wire is liable to break or in some other way become detached from its mooring and fall. Appellant is charged with knowledge that is exemplified by all human experience, and hence is charged with knowledge of the probability of a contact by the breaking of this radio wire with its wire. Appellant is further charged with knowledge that, if the insulation on its wire should become deficient to such extent that the charge of electricity it carried would escape into and charge the wire in contact, that grave danger would result to those whose business must be transacted in the immediate vicinity of its wire. In fact, it is in proof that this radio wire had heretofore broken and fallen across this electric wire. The deceased constantly made use of the rear portion of the lot on which his building stood and in such proximity where this radio wire crossed appellant's wire as that the falling of the radio wire would almost necessarily bring it over or on that portion of deceased's premises. We therefore conclude that appellant owed to deceased the duty of maintaining the insulation on its wire in such condition as that the breaking and consequent dropping of the radio wire across the electric wire would not endanger appellee in the lawful use of this portion of his premises. It necessarily follows, in our opinion, that appellant was guilty of such a breach of duty towards deceased that warranted the jury in finding it guilty of negligence. Because, however, the one sought to be made to respond in damages for an injury is shown to have committed a negligent act, does not complete the case and warrant a recovery. Plaintiff, in such an action, must go further and show that such negligent act was the proximate cause of injury. The court very aptly defined "proximate cause" as that term must be applied to the facts of this case. The jury was told that, before the negligence of appellant could be the proximate cause of the death of deceased, such negligence must have been the efficient, moving cause, without which the death would not have occurred. Unquestionably the evidence established the fact that the failure of appellant to maintain its electric wire in a safe insulated condition was the cause of the broken radio wire becoming charged with electricity and caused the death of deceased when he came in contact with this wire, and that his death would not have occurred if appellant's wire had been properly insulated. The fact that the insulation had become deficient, and that the radio wire came in contact with the electric wire at a place where such deficiency existed, and that Culwell's death thereby resulted, does not necessarily make appellant responsible for the injury that resulted, for appellant's negligence is still short of being established in law as the "proximate cause" of the death. This was realized by the trial court in the definition of "proximate cause," for he continues such definition

with instruction to the jury that such fact (the death of deceased) must have been the natural and probable result of the negligence, and that such result or a similar result ought to have been foreseen by a person of ordinary prudence in the exercise of reasonable care in the light of all the attending circumstances. The care to be exercised is ordinary care, but such care is always proportionate to the danger to be guarded against. The term "natural and probable result," used in this definition, does not mean a result that would be more probable than any other result, but means such a result that the danger of its happening is of such moment that an ordinary prudent person would have foreseen.

■ It is very ingeniously argued by appellant's able counsel that a reasonably prudent person would not have foreseen the electrical storm that preceded the injury, and the consequent breaking of the radio wire by a stroke of lightning. There is no evidence establishing, as a matter of law, the fact that the radio wire was thus caused to be severed. At most, only a jury issue was made of appellant's allegation in this respect, and it never requested that such issue be submitted to the jury, but in all requested instructions, those given as well as those refused it assumed this to be a fact. This it had no right to do under the evidence in this case, but if such issue had been properly submitted to the jury and the jury had found that the severance of the wire was caused by a stroke of lightning, we do not believe that such a finding would preclude a recovery in this case. The undisputed evidence is that the breaking of the radio wire would have been harmless, had appellant performed its duty in the matter of maintaining a properly insulated wire. As stated before, appellant was charged with the knowledge that the breakage of wires is not an uncommon or extraordinary occurrence, and, because of such knowledge, it was charged with the duty of guarding against the effect of such a breakage and falling of the radio wire. Being charged with such knowledge, the cause which produced the breaking of the radio wire in the instant case was merely incidental to the result of appellant's negligence, and not the efficient, moving cause of deceased's death. We therefore conclude that the jury was warranted by the evidence in finding that appellant's said negligence was the proximate cause of the death of deceased, and overrule all assignments of error in reference to this issue.

The authorities we conceive to authorize the conclusions announced in this case are: Oil Belt Power Co. v. Touchstone (Tex. Civ. App.) 266 S. W. 432; Jacksonville Ice & Elec. Co. v. Moses et al., 63 Tex. Civ. App. 496, 134. S. W. 379; San Antonio Gas & Elec. Co. v. Speegle (Tex. Civ. App.) 60 S. W. 884;

Snyder Ice, Light & Power Co. v. Bowron et al. (Tex. Civ. App.) 156 S. W. 550; Kessler v. West Mo. Power Co., 221 Mo. App. 644, 283 S. W. 705; Louis Humphrey v. Twin State Gas & Elec. Co., 100 Vt. 414, 139 A. 440, 56 A. L. R. 1011; and cases cited in annotated notes to this case; cases cited in notes beginning at page 1194 of 16 Ann. Cas.; cases cited in notes to 14 A. L. R., beginning at page 1024; 9 R. C. L. 1196, par. 12, and subsequent paragraphs; 20 C. J. 345-355.

■ Another question attended with some difficulty is the refusal of the court to submit special issues Nos. 8 and 9. We have reached the conclusion that there was no error in this refusal, because of the fact that the contributory negligence pleaded in the instant case is a matter of affirmative defense and the burden of proving same was upon appellant. The proof, only by inference, tends to establish the manner in which Culwell came in contact with the broken radio wire. On this issue of contributory negligence, appellant's evidence did not establish as a matter of law the fact that Culwell's contact with the radio wire was by voluntarily taking hold of same, and the requested issue that assumed this fact was erroneous. The evidence further shows that, where the deceased was at the time he came in contact with the wire, he could not see the place where the radio wire came in contact with the electric wire and could not see that it was in contact with it at all. Under this state of the record, we do not believe the court erred in refusing to give the erroneously framed special issues now under discussion.

All assignments of error, not herein discussed, have been considered, with the result that they are overruled, and, finding no reversible error, it is our opinion that this case should be affirmed.

Affirmed.