**PURE DISTRIBUTING CORPORATION et al. v. CAREY.**

**No. 9743.**

Court of Civil Appeals of Texas. San Antonio.

May 20, 1936.

Rehearing Denied Nov. 4, 1936.

John C. North, Leslie S. Lockett, and R. B. King, all of Corpus Christi, for appellants.

Jones & Kirkham, of Corpus Christi, for appellee.

MURRAY, Justice.

Appellee, Walter Carey, instituted this suit in the 117th district court of Nueces county against appellants, Pure Distributing Corporation and H. S. Johnson, seek-

ing to recover the sum of $11,000 for injuries sustained by himself and wife, Lillie Carey, when a 10-gallon oilcan fell from a truck being operated by Johnson and owned by Pure Distributing Corporation.

The case was submitted to a jury by means of 17 special issues. The jury in answering said issues made the following findings of fact:

(1) The truck in question was not being operated at the speed of 50 miles per hour.

(2) The driver of the truck did not fail to exercise ordinary care to look out for the load being carried on said truck.

(3) The truck, at the time of the occurrence in question, was being operated with fasteners holding the sides of the same in a defective condition.

(4) Such operation of the truck was negligence.

(5) Such operation of the truck was a proximate cause of the injuries to Walter Carey.

(6) Such operation of the truck was a proximate cause of the injuries to Mrs. Walter Carey.

(7) The occurrence in question was not an unavoidable accident.

(8) Walter Carey and his wife were not guilty of contributory negligence in camping near the road.

(9) Fifteen hundred dollars would reasonably compensate Walter Carey for the injuries sustained by himself.

(10) Two thousand dollars would reasonably compensate Walter Carey for the injuries sustained by his wife.

Upon this verdict the trial court entered judgment in the sum of $3,500 in appellee's (Walter Carey's) favor, and Pure Distributing Corporation and H. S. Johnson have perfected this appeal.

The controlling issue here presented is whether the evidence is sufficient to support the jury's finding that the operation of the truck with the defective fasteners was the proximate cause of the injuries to Walter Carey and his wife.

The record shows that the injuries occurred in the manner and under the circumstances which we will now state.

H. S. Johnson was a truck driver in the employ of the Pure Distributing Corporation. He was called upon to make a trip to Flour Bluff, some 12 miles south from the city of Corpus Christi. He admitted that a fastener on the truck had come loose

once before, and he knew at the time that it was defective, and that it was dangerous to operate the truck with a defective fastener. He had six 10-gallon cans of distillate on the side of the truck, which were held in place by a sideboard. The sideboard was held in an upright position by a fastener at each end, one of which was known to be defective, as above stated. While driving the truck on a gravel road, apparently lined by brush, one of these cans fell from the truck, struck the ground, the top blasted off, flew through the air, and struck Walter Carey, who was lying on a cot some 20 or 30 feet from the road, causing a severe wound in the head. His wife who was inside of a trailer house heard the commotion, saw something fly through the air, and heard her husband say he had been hit in the head and that his head had been caved in. She concluded that perhaps a number of people were making an attack upon her husband and jumped up from the bed, stumbled, got a pistol, and went to the door. She saw the blood flowing from her husband's head and as a result suffered a miscarriage; she being about three months advanced in pregnancy.

The jury, as above pointed out, found in effect that the truck was not being operated at an excessive rate of speed, that Johnson did not fail to exercise ordinary care to look out for the load on the truck, but did find that he was guilty of negligence in operating the truck with defective fasteners, and that such negligence was the proximate cause of the injuries sustained by Carey and his wife.

The court defined proximate cause as meaning a cause which should reasonably have been foreseen as likely to cause the injury in question, or some similar injury, and thus the jury were called upon to determine from the evidence whether Johnson, as a prudent person, should have reasonably foreseen that the operation of the truck with the defective fastener would be likely to cause the injuries herein complained of by Carey and his wife, or some similar injury.

In other words, before the jury could find that the operation of the truck with the defective fastener was the proximate cause of the injuries, they would be required to find from the evidence that Johnson, as a prudent person, should have foreseen that the fastener, having come loose once before, would probably come loose again, that one or more of the cans would

fall from the truck, that people might, or probably would, be camped in the brush some 20 feet from the road, that when the can struck the ground that the top thereof would be blasted off with sufficient force to fly through the air some 20 or 30 feet and strike some one on the head with such force as to injure him, and that a result of the excitement and commotion caused by such an injury, the injured party's wife might suffer a miscarriage, or that some such similar injury would result.

In determining the sufficiency of the evidence to support the jury finding, we must consider the duty of Johnson to Carey and his wife at the time and place and in the light of the circumstances under which this injury was inflicted. We are aware of the fact that the law does not require that Johnson would have to contemplate or foresee just exactly how the injury would be inflicted or just the exact nature of the injury, or that Carey and his wife would be the very persons injured. However, the law does require that, had he given the matter consideration, as a reasonably prudent person, he would have foreseen that the defective fastener would come loose and permit the sideboard to fall down and thus permit one or more cans to fall to the ground, that the lid would be blasted from the can with sufficient force to injure a person some 20 or 30 feet away, and that people would probably be out there in the brush to be injured. It is true, there was a clearing where Carey was camped, but the clearing was so small that a person passing on the road would not see it until almost opposite.

■ This combination of facts and circumstances could not be classified as that which would probably happen, but rather as that which is highly improbable.

In 30 Tex. Jur. p. 704, we find the following: "Human beings in their common dealings with each other in society should be required to exercise some degree of deliberation or forethought. It would be unreasonable to require them, before doing or refraining from doing a particular act, to exhaust the field of speculation concerning every possible or conceivable consequence which might result from their conduct. It is just that one should be charged with the duty to anticipate those consequences which in the ordinary course of human experience might reasonably be expected to result therefrom, and therefore that he should be held legally responsible for those consequences."

■ We feel that this is a very good statement of the rule, and when applied here we conclude that the injuries of Carey and his wife were not proximately caused by the defective fastener on the truck driven by Johnson.

■ In Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, 163, we find this clear statement: "It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed." See, also, Paris & G. N. Railway Co. v. Stafford (Tex.Civ.App.) 36 S.W. (2d) 331; Id. (Tex.Com.App.) 53 S.W.(2d) 1019; City of Wichita Falls v. Swartz (Tex.Civ.App.) 57 S.W.(2d) 236; Union Stockyards v. Peeler (Tex.Com.App.) 37 S.W.(2d) 126.

The evidence not only fails to support the jury finding that the neligence found by the jury was the proximate cause of plaintiff's damage, but, on the contrary, affirmatively shows that such damage was not proximately caused by such negligence.

Accordingly, the judgment will be reversed, and judgment here rendered that appellee take nothing and pay all costs.

## On Motion for Rehearing.

BOBBITT, Justice (dissenting).

This court, on May 20, 1936, filed its opinion in this cause reversing and rendering the judgment of the lower court, wherein Walter Carey and his wife, Lillie Carey, had been awarded judgment for damages for personal injuries against Pure Distributing Corporation et al., in the total amount of $3,500. Carey and wife have filed this motion for rehearing herein, which the majority of the court, after due consideration, has overruled.

It is my opinion that we were in error in reversing and rendering the cause, as set forth in the original opinion; and I am now of the opinion that the motion for rehearing, as filed herein, should be granted, our original opinion set aside, and the judgment of the lower court affirmed. I find it my duty, therefore, to enter my dissent to the action of the majority in overruling such motion for rehearing and to state my reasons for the conclusion reached.

The facts and circumstances existing and surrounding the parties, and which resulted in the injuries to Walter Carey and his wife, were stated in our original opinion as follows: "H. S. Johnson was a truck driver in the employ of the Pure Distributing Corporation. He was called upon to make a trip to Flour Bluff, some 12 miles south from the city of Corpus Christi. He admitted that a fastener on the truck had come loose once before, and he knew at the time that it was defective, and that it was dangerous to operate the truck with a defective fastener. He had six 10-gallon cans of distillate on the side of the truck, which were held in place by a sideboard. The sideboard was held in an upright position by a fastener at each end, one of which was known to be defective, as above stated. While driving the truck on a gravel road, apparently lined by brush, one of these cans fell from the truck, struck the ground, the top blasted off, flew through the air, and struck Walter Carey, who was lying on a cot some 20 or 30 feet from the road, causing a severe wound in the head. His wife who was inside of a trailer house heard the commotion, saw something fly through the air, and heard her husband say he had been hit in the head and that his head had been caved in. She concluded that perhaps a number of people were making an attack upon her husband and jumped up from the bed, stumbled, got a pistol, and went to the door. She saw the blood flowing from her husband's head and as a result suffered a miscarriage; she being about three months advanced in pregnancy."

To this statement, in my opinion, should be added the following: The 18-foot graveled highway over which Johnson drove the truck was a well-traveled public road, leading from the city of Corpus Christi to Flour Bluff and vicinity, one of the best and most generally used fishing and camping localities in the state. Many people camped and fished on and along the bay and the road in this vicinity. The Oso and Clover Leaf fishing house was only a quarter of a mile from Flour Bluff, and the particular campsite where Carey and his wife were located was out about a quarter mile from the Oso and Clover Leaf, and at least two other tents were on the same campsite where the Carey car and house trailer were parked. Driver Johnson was in a hurry, it was nighttime, and W. F. Ellis was afoot on the highway nearby, returning to the camp from bait fishing. He saw the truck "whiz by," and J. O. Rob-

erts was waiting a quarter of a mile down the road to receive the delivery of gas from Johnson. The said oilcans were heavy metal containers, full of distillate, weighing about 80 pounds each. The cap or stopper which was "blasted off" the can was the heavy metal cap, usual for such oil containers.

There is nothing unusual or mysterious about the location of the Careys as they were camped near a good fishing spot, and some 20 or 30 feet back from the road. They had a right to be there for fishing or camping purposes, just as Johnson had the right to travel that public road to deliver his gas. In the exercise of their respective rights and privileges, however, each had and owed obligations to the other as well as to the public generally.

The jury, in the proper exercise of its business and duty, found as a fact—and upon sufficient evidence—that: (a) Carey and wife were not guilty of contributory negligence in camping where they did near the road; (b) the occurrence through which they were injured was not an unavoidable accident; (c) the operation of the truck at the time of the injuries to the Careys (with its fasteners holding the sides of the same in a defective condition) was negligence, and such negligent operation of the truck was the proximate cause of the injuries to both Walter Carey and Mrs. Walter Carey; (d) $1500 would reasonably compensate Walter Carey for the injuries sustained by himself; (e) $2,000 would reasonably compensate Walter Carey for the injuries sustained by his wife.

The trial court, upon such findings of the jury, accordingly entered the judgment which is the subject of this appeal.

We held, in our original opinion in this cause, and the majority hold on the motion for rehearing, that the evidence is not sufficient to support the said findings of the jury that the operation of the truck with the defective fastener was the proximate cause of the injuries to Walter Carey and his wife. The judgment of the trial court was, and is, therefore, by the majority reversed and rendered, and all costs assessed against the Careys.

A careful review of our original opinion, and further consideration of the record in this case, and the very comprehensive motion for rehearing, as filed herein by counsel for the Careys, convince me that the judgment of the trial court should be affirmed.

It is clear that the evidence to support each of the above findings of the jury is either (a) undisputed, or (b) plainly determined by the jury in favor of the Careys, and on disputed testimony. The facts, therefore, are definitely decided in favor of the Careys. The majority of this court hold that all the facts and evidence, as thus determined, are insufficient, as a matter of law, to support the judgment. To such conclusion I cannot agree, and for the following reasons:

It is the well-established law of this state that proximate cause is, under proper instructions of the court, as to the circumstances of each particular case, a question of fact to be determined by the jury. Tex. Jur. vol. 30, pp. 826, 827, and authorities cited; International-Great Northern Railway Co. v. Casey (Tex.Com.App.) 46 S.W. (2d) 669.

Under appropriate charges and definitions, the trial court in this case submitted the question of proximate cause of the injuries to the Careys to the jury for its determination. The jury had all of the facts and circumstances before them. In the first place they had before them the definite fact, frankly admitted by the driver, Johnson, that the fastener on the side of the truck was defective; that it was "dangerous" to drive the truck over the highways, loaded as it was, with the fastener defective, as he well knew it to be. In the next place, the jury had before it the evidence that Johnson was driving the truck, in such defective condition, rapidly down a public highway, in the nighttime, where people have the right, and may reasonably be expected, to be traveling; that he was going to a well-known fishing resort, Flour Bluff; that he had to pass by other fishing resorts and campsites—Oso and Clover Leaf—at and around all of which places people not only had the right, but where they actually were camped. Notwithstanding all such facts and circumstances, all of which were either well known by Johnson, or in the exercise of just ordinary care and foresight he must be charged with knowing, he "whizzed" down the public highway in the nighttime with such heavy truck with its known defective fastener on the side, and the result was that one of his heavy oilcans tumbled off the truck, "blasting" the metal top or cap out of the can and into the face of the sleeping Walter Carey, who was camped beside the road, at a campsite where at least two other tents were also situated, with the injurious conse-

quences to Carey and wife as established by the findings of the jury.

I submit that, under such facts and circumstances, the trial court could not have properly done otherwise than pursue the course it did in this cause, to wit, under proper charges and definitions, call upon the jury to decide the questions of fact as to negligence, proximate cause, and damages. To hold otherwise is to assert that there are no fact questions involved, when all the evidence is considered; that only one reasonable conclusion could be drawn from the facts and circumstances, and that conclusion is that Johnson could not reasonably foresee or anticipate that the defective fastener would come loose and permit the can or cans to drop from the truck and cause injury to persons who, in the exercise of their rights, might be upon or near by the highway; such injuries, for example, as were in fact sustained by the Careys, or some similar injury. To say the least of it, the plain facts and circumstances contained in the record before us present room for reasonable minds to differ as to whether Johnson was charged with the duty of anticipating or foreseeing that such consequences might or would result from his action as did in fact result therefrom. The situation presents a plain question or issue of fact for the determination of the jury. Trinity & B. V. Railway Co. v. McDonald (Tex.Com.App.) 208 S.W. 912. The proper test set forth in this case is this: "Whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts."

When we face the simple facts set forth in this record that (a) Johnson himself stated that he knew it was dangerous to drive the truck over the public highway in its defective condition, as he did deliberately so drive it; (b) that the Careys were camped where they or other persons had a right to be, near such public thoroughfare; (c) that a heavy can fell from said truck as so operated and inflicted serious injuries upon the Careys, as is undisputed in this case, I do not understand that a clearer question or issue of fact, as to foreseeability or reasonable anticipation, could hardly be presented. To repeat: Johnson himself anticipated danger, as a result of his operation of the truck in its defective condition, and so stated; the falling of the heavy distillate can from the said truck and the "blasting" of the cap therefrom immedi-

ately preceded and directly produced the injuries without which the same would not have occurred. Of course, Johnson did not and could not know who, nor how many, nor in what particular manner, persons on or adjacent to the road might or would be injured, but he did know, and any other person of ordinary prudence, situated as he was, must have known, that a falling heavy container from a large swiftly moving truck, might produce injury to others, who had the right to be, and who probably would be, on or near the public road.

The jury decided that Johnson could reasonably foresee and anticipate the possibility of persons being on or adjacent to such public road, and that they might be injured, if his admittedly defective fastener permitted the heavy containers to fall off the truck. This decision of the jury, being well supported in the evidence, should not be set aside and nullified by the court.

I submit that the test applied in our original opinion, and adhered to by the majority on the motion for rehearing, as to foreseeability in this case, is not supported by reason or authority. The test so applied is stated as follows: "Before the jury could find that the operation of the truck with the defective fastener was the proximate cause of the injuries, they would be required to find from the evidence that Johnson, as a prudent person, should have foreseen that the fastener, having come loose once before, would probably come loose again, that one or more of the cans would fall from the truck, that people might, or probably would, be camped in the brush some 20 feet from the road, that when the can struck the ground that the top thereof would be blasted off with sufficient force to fly through the air some 20 or 30 feet and strike some one on the head with such force as to injure him, and that as a result of the excitement and commotion caused by such an injury, the injured party's wife might suffer a miscarriage, or that some such similar injury would result."

It seems to me that the application of the above test as to anticipation and foreseeability in negligence cases does violence to the well-established rules in such cases, and places an unjustified burden upon injured persons under the doctrine of proximate cause. Such test requires the complainant or injured party to show that the wrongdoer must actually foresee or anticipate that some particular injury might or would be inflicted in a particular manner

before the wrongdoer could be held liable for his wrongful acts or conduct. I submit that such is not the just or correct rule.

It is sufficient to render a wrongdoer liable for the consequences of his conduct that a person of ordinary prudence situated in the same or similar circumstances knew, or in the exercise of ordinary care should have known, that his act or omission would probably result in injury to another. As stated in Tex.Jur. vol. 30, p. 701:

"In order that the actor may be deemed to have been responsible for the consequences of his conduct, it need not appear that he could have foreseen the particular prejudicial occurrence, happening as the evidence shows that it did happen, and resulting in the injury or damage which is shown to have resulted therefrom. 'The rule * * * is not that the particular injury could be anticipated, but that some injury might be anticipated.

" 'Neither is it essential, in order to make a negligent act the legal proximate cause of an injury, that the particular injurious consequences and the precise manner of their infliction could have been reasonably foreseen, but some like injury produced by similar intervening agencies.' " And cases cited in footnotes.

It is not necessary in order to fix liability that a wrongdoer should be held to have foreseen that any particular injury to any particular person or class of persons would probably result in any particular manner or at any particular place or spot, from his negligent acts or omissions. Actual anticipation of peculiar or detailed injuries is not the test. It is sufficient to hold the actor to show that a man of ordinary prudence, in the same or similar circumstances, should have foreseen or anticipated, in a general way, that his conduct would or might result in injury to another person or persons. City of Dallas v. Maxwell (Tex. Com.App.) 248 S.W. 667, 27 A.L.R. 927; Houston Chronicle Publishing Co. v. Lemmon (Tex.Civ.App.) 193 S.W. 347; Hines v. Morrow (Tex.Civ.App.) 236 S.W. 183; Texas Co. v. Brown (Tex.Civ.App.) 82 S.W.(2d) 1101; Browning v. Beck (Tex. Civ.App.) 73 S.W.(2d) 626, 628; Restatement of the Law of Torts, § 500, subd. c, p. 1295; R.C.L. vol. 22, § 12, p. 125 et seq.; Restatement Law of Torts, § 433, p. 1167.

Applying this just, fair, and reasonable test to the undisputed and well-established facts and circumstances of this case, if we

follow the conclusion of the majority we are faced with this condition:

Even though Johnson well knew (a) the dangerous condition of his defective truck, that (b) he was driving at nighttime down a well-traveled public road, and (c) on or along which other persons had the right and might reasonably be expected to be, that (d) by reason of the defective condition of his truck one of his heavy containers would or might fall from the truck, blasting the top therefrom and resulting in serious injury to the Careys (who had the right to be where they were and who were not guilty of any negligence), nevertheless, the persons thus seriously injured cannot recover against the driver and owner of the truck for the stated reason that Johnson, as a prudent person, (1) could not reasonably foresee that the defective fastener,— though it had come loose once before,— would probably come loose again, thus (2) permitting one or more of his heavy cans to fall from the truck, (3) that people might or probably would be camped alongside the public road a reasonable distance therefrom, (4) that when said can or cans struck the ground the metal cap thereof would be blasted off with sufficient force to fly through the air some 20 or 30 feet and strike some person on the head with such force as to injure him, and (5) that as a result of such injury and excitement (the injured husband crying out for help and bleeding profusely from the face) the injured party's wife might suffer a miscarriage, or that some such similar injury might or would result.

I submit that such conclusion is not supported by the better authority, nor does it comport with sound reason and justice when applied to the true test of proximate cause in negligence cases. Such conclusion requires the injured party to show that Johnson, the alleged wrongdoer, before he could be held liable for his negligent conduct and the resulting injuries, must have foreseen that (a) if the can fell from the truck the lid or top would be "blasted" therefrom and (b) that people probably would be camped out beside the road and be thereby struck and injured by the flying cap of the tumbling oil container. Such requirement does violence to the true and just rule in that it permits the negligent actor to escape all liability unless he could be shown to have foreseen (1) the precise manner through which the injured persons might be struck or injured as a result of his

negligence in permitting a falling oil container to tumble from his truck due to a known defective fastener; (2) that the injured persons would be at some particular place or location; and (3) that one of such persons would or might be a married woman and in a state of pregnancy.

To hold Johnson liable for the consequences of his conduct in this case, it is sufficient if the Careys show that he knew, or in the exercise of ordinary care should have known, that: (a) The fastener on his truck might again come loose while he was driving down a public highway, and thus permit the can or cans to fall from his truck; (b) if the can or cans should or did so fall, injuries and damages might result to other persons upon, along, or adjacent to such public road.

I submit that such statement under the facts of this case meet fairly the rule and test of proximate cause as established in this state. The Supreme Court of Texas, in the case of Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S.W. 390, speaking through Phillips, Chief Justice, held this to be the rule: "As to whether a given act of negligence may be deemed the proximate cause of an injury is simply whether, in the light of the attending circumstances, the injury was such as should reasonably to have been anticipated as a consequence of the act." See also Tex.Jur. vol. 30, pp. 699 to 718, inclusive, and cases there cited.

It is proposed that Johnson in this case is to be excused from any liability to the admittedly injured persons on the ground that he cannot be held to have reasonably anticipated the consequences of his confessed negligent and dangerous act of driving the oil truck down a public highway in the nighttime with a defective fastener, which, it is clear in this case, resulted in the heavy oil container tumbling from the truck, causing the cap thereof to be blasted from the can and hurled into the face of the sleeping Carey, who was reposed on his cot near the highway. In other words, the doctrine of "foreseeableness" in this case is the shield behind which Johnson is permitted to avoid all liability for serious injuries to others, and which I submit are the direct, natural, and probable result of his confessed negligent and reckless conduct.

The general rule seems to be clear that "if the injury is a natural and probable consequence of the act complained of, then that violation is correctly taken as the prox-

imate cause of the injury." Texas & N. O. Ry. Co. v. Bolton (Tex.Civ.App.) 235 S. W. 215, 219. The Supreme Court, speaking through Chief Justice Gaines, in reference to the import of the language above quoted has this to say: "Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws." Texas & P. Ry. Co. v. Bigham, supra, 90 Tex. 223, 38 S.W. 162, 163.

Consequences which are only "possible" are not to be held as usual, natural, or even probable. Panhandle & S. F. Ry. Co. v. Sledge (Tex.Civ.App.) 31 S.W.(2d) 146, affirmed Commission of Appeals, 45 S.W. (2d) 1112. On the other hand, the expression "natural and probable result" does not mean "a result that would be more probable than any other result." Texas Power & Light Co. v. Culwell (Tex.Civ. App.) 19 S.W.(2d) 816, 821; Id. (Tex. Com.App.) 37 S.W.(2d) 123.

It is stated in 30 Tex.Jur. p. 709, that "if common experience has demonstrated that injury or damage usually results from the act or omission, the actor may in all reason be deemed to have foreseen the harm." Also, "one sui juris is legally charged with the duty of anticipating all the consequences of his conduct which under ordinary circumstances flow therefrom as the natural and probable result."

Further, it has been well held: "Ought the injury complained of or some injury of a like character to some other person similarly situated to have been foreseen by the party whose alleged negligence has caused it as the probable sequence of such negligence? If so, then the causal connection between the negligence and the injury is not broken." Houston Belt & Terminal Ry. Co. v. O'Leary (Tex.Civ.App.) 136 S. W. 601, 605.

It is admitted by Johnson in this case, that he knew his truck was defective; that he knew, in effect, it was "dangerous" to drive same down a public highway, loaded as it was, and defective as it was, as he admitted he knew it to be, and for well-understood and practical reasons, known to all men as a result of common experience from the operation of automobile trucks over public highways, upon and adjacent to which other people have the right and must reasonably be expected to be. Can there be any doubt, in the mind of any reasonable

person in the light of the facts and the circumstances of this case, that injury might result to some person from the operation of the truck? Johnson himself considered it dangerous to drive his truck, as he did drive it, in its defective condition. Certainly he knew, as any reasonable and prudent person must have known, that as he dashed down the public highway, with a defective fastener on his truck, the heavy containers might, by reason of such defect, fall or be thrown from the truck upon or alongside the highway, where other people had the right and must be reasonably expected to be. In sound common sense and judgment, viewed in the light of the facts and circumstances in this case, and the common experience of all men, this was the "danger" which Johnson realized to exist as the result of his own conduct, and to which he gave expression from the witness stand. Such being true, can any sound reasoning and practical mind doubt for a moment, that Johnson "anticipated" and, generally speaking, "foresaw," that the result of his negligence might, or probably would, result in injury or damage to some other person on, or along, the highway? Certainly this is true, unless we forget the plain facts and circumstance of this occurrence, overlook the common experiences of mankind, and drift off into abstract theories which often lead to impractical and illogical conclusions, and result in injustice. I submit that the serious consequences—the injuries to the Careys—were the natural and probable result and consequence of the negligent conduct of Johnson as shown by the record in this case, and that he should not be permitted to escape liability, nor should the Careys be denied recovery on the theory that Johnson did not anticipate and could not foresee the exact or particular consequence of his confessed negligent acts.

The following cases, I submit, rest upon facts and circumstances not as clearly within the rule as is the case at bar; but in each thereof, the actor was held liable for his negligent conduct toward the injured persons, under conditions and circumstances more difficult to bring within the rule of foreseeability and anticipation, than we have before us in this case:

In Hines v. Morrow (Tex.Civ.App.) 236 S.W. 183, the plaintiff's peg leg got stuck in the mud at a railroad crossing while attempting to tow out a car. The railroad could not foresee that a man with a peg leg would come along and get it stuck in

the mud, but it could anticipate the danger of a bad crossing.

In Texas Company v. Brown (Tex.Civ. App.) 82 S.W.(2d) 1101, the oil company could not foresee that gas from its vent pipe, 18 inches above ground, would seep into plaintiff's storm cellar, 163 feet away, and cause an explosion, but it could foresee that in a general way the gas presented a dangerous situation and it stood charged with the knowledge that such gas clings to the ground and seeks the hollows. It was not necessary that the company know of that particular cellar or location. Likewise it was not necessary that Johnson know of that particular camp where the Careys were reposed on the night of their injuries.

In Browning v. Beck (Tex.Civ.App.) 73 S.W.(2d) 626, 628, the defendant did not know that plaintiff would become frightened in the back seat of the car traveling in the opposite direction because of the conduct of the defendant in coming down the wrong side of the road and thus attempt to jump from the car, causing the passing car to strike the open door. Had the plaintiff not opened the door the cars would have successfully passed each other. The defendant could not. anticipate that plaintiff would open the door and attempt to jump out. Yet the defendant could foresee in a general way that his negligent operation was calculated to bring about injury.

In the instant case Johnson, of course, could not "anticipate or foresee," as he dashed down the highway with his defective truck, exactly or with particularity, (1) just where persons might be camped; (2) that they might be sleeping out in the open on a cot; (3) that a man and his wife would be camped exactly as the Careys were; (4) or that the man's wife would be an expectant mother. He was, however, charged with knowledge of the facts that (a) his truck was dangerously defective to be driven along any highway where people might be; (b) he was dashing down a well-traveled highway in the nighttime; (c) other people were or had the right to be traveling upon or camped alongside such highway; and (d) his defective fastener on the truck had once before come loose and might come loose again, and if it did, the heavy oilcans would likely tumble off his truck and, in "some manner," inflict serious injuries to another or other persons upon or alongside the highway.

The direct result of Johnson's negligent and wrongful act, in driving his defective truck—known by him to be "dangerous"—over the public highway, as he did thus deliberately drive it, is that an innocent fisherman, sleeping on his cot in a regular camp lot near such highway, and perhaps dreaming of the fish he hoped to catch or tell about, and perhaps dreaming (as he had the natural right to do) of the arrival of an heir, was struck in the face by the heavy top or cap being "blasted" out of a falling heavy oil container which tumbled off the truck as the result of the defective fastener thereon. The jury, under proper instructions and definitions, and with all the several facts and circumstances before them—including also their common sense and judgment to be exercised along with the "common experiences of men" and the natural laws bearing upon and resulting from acts committed or omitted in the state of facts before them—found definitely that the Careys were not guilty of contributory negligence, and that Johnson was guilty of negligence in this case, and assessed the damages in a reasonable amount.

There was no act or omission on the part of the Careys or any one else that intervened, or contributed to the negligent acts and omissions of Johnson, which directly caused and resulted in the injuries. Johnson's negligent act and wrongful omission, in driving the defective truck down a public highway, as he did, resulted in the injuries to the Careys; and, but for such negligent act and wrongful omission, the Careys would not have been injured. There was certainly no "intervening agency" that caused or contributed to cause such injuries. There was no break in the "chain of events" as they took place after they had been set in motion by the wrongful act of Johnson, and which in direct, logical, and continuous sequence, resulted in the serious injury to the innocently sleeping Carey on his cot beside the road.

It appears to me that there is no possible escape from liability on the part of Johnson, in so far as the injuries to Walter Carey are concerned. Certainly it is true that the injuries to his wife, under the facts and circumstances, are more remote, or at least another step removed, than the injuries to the husband.

All of the acts and omissions, as above stated, and their resulting injuries to Walter Carey, show, also, in my opinion, that

the serious injuries to the wife, as found by the jury, were proximately caused by the negligence of Johnson.

Mrs. Carey was sleeping inside the house trailer attached to the automobile, while Walter reposed on his cot just outside and adjoining the trailer. When the truck with its defective fastener was "whizzed by" driven by Johnson, it seems the wife heard the noise caused by the tumbling oilcan. It appears she looked out the trailer house window or door and observed something flying through the air just before her husband was hit in the face by the heavy top of the tumbling oilcan. In an instant her husband began "yelling bloody murder" and called for help. She then secured a pistol in the trailer and started to his aid. She stumbled, and then came face to face with her husband who was bleeding profusely from his injured head and face. As the result of all such excitement and confusion, Mrs. Carey suffered a miscarriage.

Under proper definitions and instructions by the trial court, the jury found that the negligent acts and omissions of Johnson proximately caused the injuries, resulting from such serious and unfortunate conditions, to the expectant mother, and assessed damages therefor in a reasonable amount. There can be no question, of course, of the right of recovery for such injuries as resulted to Mrs. Carey, if actual negligence and proximate cause are shown to exist. It is not necessary that the alleged wrongdoer be shown to have been responsible for a direct physical blow, or contact suffered by the injured party. If the negligence of Johnson is shown to have been a substantial factor in bringing about the trouble and consequent injuries to Mrs. Carey, he should be held liable. Restatement of the Law of Torts, § 436, and authorities cited.

But for the negligent conduct of Johnson, according to the record before us, Mrs. Carey would not have suffered the serious injuries which the jury found she did suffer. There is no break in the chain of events which started with Johnson's confessed negligence in driving his defective truck down the public road and ended with the injuries to Mrs. Carey. It was not unnatural or improbable that a man and his wife might be camped along the road at the time and place and in the manner shown. Such was a usual and customary practice in the delightful environs of the "Naples of the Gulf." It is not unnatural that this husband and wife found themselves in that happy situation and fortunate circumstance that would ordinarily result in a perpetuation of the family name and fame. They had the right to be where they were, as they were, and had the right not to be injured, in any of the respects shown by the findings of the jury. They were not guilty of any act of negligence as charged by the wrongdoer. And I submit that the injuries to Mrs. Carey, under all the various facts and circumstances clearly shown by this record, are directly traceable to, and the result of, the negligent conduct of Johnson.

The elements of remoteness, anticipation, and foreseeableness should not be so extended, in connection with the doctrine of proximate cause, as to result in a denial of justice, particularly in a case, as here, where the wrongdoer frankly admits that he was guilty of an act and a course of conduct which is plainly shown to constitute negligence under the facts and circumstances as established on the trial of the case.

It seems to me that the Bigham, Stafford, Swartz, and Peeler Cases, cited by the majority as upholding their conclusions, are distinguishable and do not apply to the facts of this case. Clearly, the test applied by Chief Justice Gaines in the Bigham Case and approved by Justice Critz and by him applied in the Peeler Case, to wit, "ought the agents of the company to have foreseen that, as the result of the imperfect fastening of the gate, the injury, or any injuries similar in character, would probably result?" does not apply to the facts and circumstances of the case at bar. In this case the wrongdoer was in personal charge of and recklessly driving a heavy truck down a public highway, when he knew the truck to be defective, and which he stated, in effect, on the witness stand he knew to be "dangerous" to others who might be on or along the highway. Nevertheless, he deliberately drove the truck on the highway, with the result of serious injury to others. In reality, Johnson in this case affirmatively anticipated and foresaw the danger of injury to others as the result of his conduct, and so testified. And even if he had not so testified, it is plain to any person of ordinary intelligence when exercised along with the common experiences of men in the use of such instruments as oil trucks upon our highways, that the operation of the particular truck in question, as it was operated with its known defects,

might result in injury to others, as the parties here suing were in fact injured, or that some other similar injuries might result. It certainly does not require "prophetic ken" to anticipate the happening of injury to another alongside a highway by a truck driven as this truck was, and by a driver who frankly stated he knew it to be dangerous, in the condition it was at the time.

In the Stafford Case, opinion by Justice Sharp, it is plainly held that "the rule is generally recognized that whether a certain result could be anticipated from a given act or omission is usually a question of fact and becomes a question of law only when but one reasonable conclusion can be drawn from the facts." It is further held in this case: "The rule is well settled that foreseeableness or anticipation of injury is an essential element of proximate cause."

It is well settled, of course, that the question of proximate cause, including all of its elements, is ordinarily a question of fact for the jury, and the finding of the jury will not be disturbed by the court, if based upon evidence, and upon which reasonable minds might reach different conclusions.

In the Stafford Case recovery was denied on the ground that an independent and intervening agency was responsible for the injuries complained of, that the proximate cause of the death of the railroad employee was the act of other persons in no way connected with the railway company, and that but for such intervening agency the injuries would not have resulted.

In this case we have no such question. There is no suggestion or claim of the act of any other party or any other agency being in any way responsible for the injuries to the Careys. The chain of events is clear, continuous, and unbroken from the very beginning, where it is shown that Johnson started on his trip with a truck in a known defective condition, and ending with the fully established serious injuries to the Careys, which resulted from one of his heavy oilcans tumbling from his truck, due to the defective fastener, hitting the ground, blasting its heavy cap out of the can and into the face of one of the injured parties, all as shown by the evidence and found by the jury, under proper charge.

For the reasons stated, it is my opinion that the judgment of the trial court should be in all things affirmed.